Hayes *v.* Arrington.

## HAYES *v.* ARRINGTON.

### (*Nashville.* March 29, 1902.)

1. STATUTE OF FRAUDS. *Leases of realty.*

    A verbal lease of real estate for the term of one year, which term expires within three years from date of lease, is valid under the statute of frauds, although it is not to be performed within a year from its making. Such leases are, under the statute of frauds, good for three years, and therefore necessarily excluded from that clause which renders void verbal contracts which are not to be performed within a year.

    Code construed: § 3142 (S.); § 2423 (M. & V.); § 1758 (T. & S.).

    Cases cited: Anderson *v.* May, 10 Heis., 84; Meachem *v.* Herndon, 86 Tenn., 366.

2. STATUTES. *Special overrules general provision.*

    It is a rule of construction that a special provision in a statute will control a general provision which would otherwise include the former.

---

FROM DAVIDSON.

---

Appeal in error from the Circuit Court of Davidson County. JNO. W. CHILDRESS, J.

JEFF McCARN for Hayes.

JNO. B. CANNON and JNO. A. BELL for Arrington.

SNODGRASS, J. The plaintiff claimed that on the 11th of September, 1900, he had rented of defendants a house in the city of Nashville for the year ensuing from October 1 under contract, not in writing, and, averring that defendants had breached the contract, sued for damages resulting.

The defendants denied the fact of a contract, and denied its validity, if made, on the ground that it was obnoxious to our statute of frauds, and specifically that it was void because it was not in writing and was not to be performed within one year from the making thereof.

The case was tried before a jury and evidence was introduced to prove and disprove the making of any contract, and that issue of fact was, therefore, involved, but its determination was not permitted because the Circuit Judge instructed the jury as follows: "Whether there was an agreement or contract made and entered into by and between the plaintiff, on one hand, and the defendants on the other, is a question of fact for you to determine from the evidence, but without entering into that question fully, I desire to instruct you as to the effect of the statute of frauds and its bearing on this case. If you find from the evidence that the parties to this suit undertook to enter into a contract of rent or lease, not in writing, some time during the month of August or September, 1900, and the term or period of the lease was not to begin until the

1st of October, 1900, and was to continue for a period of twelve months from October 1, 1900, and said contract was not in writing, then I instruct you that such contract was void under the statute of frauds, and the defendant would not be liable for damages for a breach thereof, and you will, in that case, find for the defendants. In other words, an oral contract of rent or lease beginning at a future day, and running for a period of twelve months from that day, cannot terminate by its terms within a period of twelve mouths from the making thereof, and is void, and no recovery can be had for a breach of such a contract."

There was no question that the contract, if made at all, was made before the inception of the year of its performance, and, therefore, this instruction was conclusive, and the jury was not called upon to pass, and could not properly have passed upon the question of the fact of the making such a contract because it was charged to be immaterial.

The verdict under the charge was, of course, for defendants, and plaintiff appealed and assigned errors.

The question involved, though not a new one in this State (for it has been twice decided), is, nevertheless, one of the most interesting, and one about which there has been more conflict and confusion of judicial opinion than any other in

Hayes *v.* Arrington.

the statute of frauds, or, rather, we should say in the statutes of frauds, for, commencing with the English statute of 29 Car. II., Ch. 3, entitled, "An Act for prevention of frauds and perjuries," there have been many Acts based upon this, and, in most of the States of the Union, it has been in whole or in part re-enacted, but generally with omissions, amendments, and alterations, sometimes re-enacted in effect but in different verbiage, and sometimes with changes or omissions, which altered its meaning in particulars. When the *words* of the statute have been used the construction put upon them by the English Courts has also been adopted, and this is true generally, though not always, when equivalent words have been employed. Where this exception has prevailed, we think it will be found that the equivalent words have been misinterpreted or confusion has resulted from application of other cases as authority which were themselves based upon statutes not identical in terms or effect. (See Bouvier—Title—Frauds—Statute of and authorities cited, with others hereinafter referred to.)

We need not quote here the English statute. It is sufficient to say of it that it contained in substance one provision making void all leases not in writing, intended to exceed the term of three years "from the making thereof." It contained also a provision that no action should be brought whereby to charge any person *"upon any agree-*

24 P—32

*ment* that is not to be performed within the space .of one year *from the making thereof,* unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith, or some other person thereunto, by him lawfully authorized."

The first stated provision governed as to leases, and made unwritten leases void except for a term not exceeding three years "from the date of the making thereof." The second quoted had no reference to leases (already provided for in the first), but made all agreements, not so provided for (though its terms were general), when not in writing, void, if not to be performed within one year from the making thereof. So it will be seen that while different terms might be covered by unwritten leases, and other unwritten agreements, viz.: three and one years, still under the express words of the English law, these terms both began from the "making" of the contract, and not from the inception of its performance, and such, of course, was the construction of the English Courts.

The construction was also that the second stated provision of that law, which was Sub-sec. 5 of Sec. 4 of the English Act, had no reference to leases provided for in our first stated proposition, and which was contained in the first and second sections of said act.

And this was not only true of that proposition, because of the special separation of these provisions in entirely different sections, but is true of all later acts when such provisions are made, once by a special enactment for a particular purpose, and again by a clause for all purposes, which, taken literally, would conflict with the other, upon the familiar rule of construction that "a special provision in a statute will control a general provision which would otherwise include that mentioned in the particular provision."

End. St. Const., Sec. 390, p. '560. So it was said of similar provisions of an identical statute: "Clause 5 of the statute would prohibit a verbal agreement for the lease of real estate for one year to begin in the future, if it were not that clause 4 provides a rule to govern such leases." 86 Texas, 546. *Bateman* v. *Maddux.*

In the changes that were made in the partial re-enactment of the English statute in several of the American States, two were frequent, either separately or together, one reducing the term for which unwritten leases were good to one year, instead of three, and another omitting from such special provisions as to lease agreements the words, "from the making thereof." Both these changes were made by the Tennessee Act of 1801 (Code, Shannon, § 3142, Sub-secs. 4, 5). Subsec. 4 provides that no action shall be brought whereby to charge any person upon any contract

for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year (omitting "from the making thereof"), unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.

This is followed by Sub-sec. 5, with a prohibition of suit contained in the English law "upon any agréement or contract," meaning any other agreement or contract (according to uniform English construction, and correct statutory general construction as we have shown), which is not to be performed within the space of one year *from the making thereof."*

In the last sub-section we have the words "from the making thereof," included as in the English law, but the other is perfect in itself, omitting this phraseology, and does not control the first, as it did not under the English construction.

Such, in the best considered cases, has been the uniform construction of statutes identical with ours, or of similar purport, because of the omission noted in the preceding discussion, and though there are some to the contrary, it will be found that where these were not based on statutes identical with the English statute, or similar in meaning, they were either predicated on oversight

of the changes, or misleading general authority stating the English rule, or misconstruction.

The English rule that when a statute contains the special and the general provisions we have quoted, the former controls, and where the words, "from the making thereof," have been omitted from the special lease provision, the contract is good for the year of its performance, and not merely for a year "from the making thereof, has been adopted by the Courts of New York, Iowa, Michigan, Indiana, Colorado, Texas, Connecticut, and Wisconsin, and, as we shall see further on, Tennessee. 1 Seld., 464; *Young* v. *Dake,* 37 N. Y., 652; *Green* v. *Wickle,* 64 N. Y., 518; *Becar* v. *Flues,* 20 Iowa, 105; *Sobry* v. *Brisbee,* 52 Mich., 462; *Whiting* v. *Oehlert,* 113 Mich.; *Tillman* v. *Fuller,* 31 Ind., 474; *Huffman* v. *Stark,* 3 Colo., 287; *Sears* v. *Smith,* 86 Texas, 546; *Bateman* v. *Maddux,* 1 White & W. Civil Cases, Ct. App., 957; *Styles* v. *Rector,* 18 Conn., 230; *Eaton* v. *Whitaker,* 60 Wis., 1; *Brown* v. *Kayser.*

Opposed to these authorities, defendants insist, that in ten States a different ruling has prevailed.

They cite Pennsylvania, Kansas, Georgia, Maine, Massachusetts, Illinois, Missouri, Alabama, Minnesota, Vermont, Florida, and Oregon cases. A careful analysis of cases referred to will show that the greater part of them are controlled: first, by

statutory provisions, or differences in the phraseology of the Acts; or, second, omissions of the special provision we have discussed while the general provision was embraced; third, or reliance on English authority without making the distinction necessary on modifications of the English statutes; fourth, or error in application of the law. Of the first class are Pennsylvania, Illinois, Vermont, and Maine. Of the second are Georgia and Massachusetts (see 1 Pickle, 44; *Ellis* v. *Page*). Of the third, are Florida, Alabama, Oregon, Missouri, and Kansas, and also of the last are Kansas, Missouri, and Alabama, with probably others in this and the other classes. We have not the time or inclination to review them all. It is most ably done in the brief of counsel for defendant in error, which well merits a more elaborate notice from its clear and particular analysis of these cases, and the statutes on which they are based. We have contented ourselves with a more condensed and general statement in reference to them, and we pass now to the Tennessee cases on the subject, after specially commending to the further consideration of those interested in a greater elaboration of the question, the cases cited from New York and Texas, which have dealt with it with much force and particularity.

The two cases in this State deciding the question are *Anderson* v. *May,* 10 Heis., 84-88, and *Meachem* v. *Herndon,* 2 Pickle, 366-370; the

opinion in the first case delivered by Chief Justice Nicholson, and that in the last by the writer of this opinion.

They would merely have ,been cited, and no further deliverance made by this Court had it not been for the fact that the first was in construction of the Arkansas statute, and discussed the question and decided it, not upon our own, but one practically identical, and the second decided it without discussion; and upon this point neither are head-noted, definitely, with regard to construction of our own statute; and the latter, not on this point at all. Its importance, therefore, required a full opinion, and, as far as practicable, a review of the cases upon which it was based, in connection with the definite settlement of it, in the last case, where it was taken for granted, and determined as a matter of course after a thorough consideration of the question, but without discussion.

Before closing this opinion, we deem it proper to notice a suggestion antagonistic to this view, based upon the argument that a lease contract made in one year might be made available many years hence to the great surprise and injury of a subsequent vendee.

In reply, we say that such a result could not be very serious, as an unwritten lease could only be valid for one year, but if that should prove a detriment to a purchaser, it could not

affect our view of the construction given. We are bound to declare the law as it is; *ita lex scripta est.*

But under an existing statute, little harm could result, because it is provided in Sec. 3663 of the Code (Shannon's ed.), that leases for more than three vears shall be in writing, and, to be valid, any any person other than the lessors, his heirs, and devisees, and persons having *actual notica* thereof, shall be proved and registered as hereinafter provided.

It results that the judgment must be reversed and the case remanded for a new trial.