HARVEY P. BISSELL (JAMES D. McKENNA ET AL.) *vs.*
FRANK S. BUTTERWORTH ET AL.

\* Third Judicial District, New Haven, June Term, 1922.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

The legal sufficiency of certain paragraphs of a defense can be determined only by considering them in connection with others which are denied.

The State established a trust fund (Public Acts of 1919, Chap. 336; id. 1921, Chap. 391), which provided that the interest on the same should be paid to the treasurer of an organization of soldiers, sailors and marines who entered the military or naval service of the United States or its allies during the war with Germany and who had been honorably discharged or relieved from active service therein, and that said interest should be expended by such organization, when perfected to the approval of the State Board of Control, "in furnishing food, wearing apparel, medical or surgical aid" and other relief, including funeral expenses, to such soldiers, sailors and marines who were citizens or resident aliens of this State at the time of entering such service, or to their widows or dependent children under sixteen years of age, who should be in need of the same; but no express provision was made for the payment of the expenses necessarily to be involved in the discharge of the duties thus imposed. The Connecticut Department of the American Legion was the organization approved by said Board of Control to disburse the interest of this trust fund, to which, through its treasurer, payments of this interest have been made, and by which all moneys so received have been expended for the purposes specified in said Acts and for expenses necessarily incurred in the performance of such duties. The plaintiff sought to restrain said Department and its treasurer from using any part of these moneys for the payment of such expenses. *Held* that the Acts in question, like every other legislative enactment, must be construed, if possible, so as to give them force and effect; that they obviously demanded personal services in thoroughly investigating the needs of applicants, in purchasing and delivering the necessary supplies and relief, and in keeping a record of the work done, all of which must be paid for by some one; and therefore that it was only reasonable to conclude that the General Assembly intended its agents should be allowed, out of the income of the fund, all reasonable

---

\* Transferred from first judicial district.

charges and expenses necessary to effect its purposes, which might include the salary of a competent treasurer or superintendent.

The Acts provided that no portion of the interest on said fund should be expended for organizing or in maintaining the organization chosen to disburse it. *Held* that the facts alleged in both the complaint and answer showed that there had been no violation of this provision.

It is a general principle of law that a trustee is entitled to be reimbursed for all costs which he has properly incurred in the execution of his trust, and to fair compensation for his time and trouble in managing the trust fund and performing the duties of an office he has undertaken for the benefit of others,—although no express provision for such charges and expenses has been made by the creator of the trust.

Argued June 13th—decided July 7th, 1922.

SUIT to restrain the defendant Butterworth from receiving as compensation for personal services any part of the money paid to him under the provisions of Chapter 336 of the Public Acts of 1919, as amended by Chapter 391 of the Public Acts of 1921, and to restrain the defendant The American Legion, Connecticut Department, from paying to any person any part of the money received by it under the provisions of said Acts, as compensation for personal services in administering and disbursing the interest accumulations of the fund provided by said Acts, and from authorizing any person to withdraw any of such money for such purposes; and to require the defendant Butterworth to disclose and return any money he had hitherto received as compensation for such services; also for a declaratory judgment that no part of the principal or interest of the fund appropriated by said Acts should be disbursed, paid or extracted from said principal or interest, as compensation for the personal services of any person charged with the duty of directing the disbursement of said principal or interest; brought to the Superior Court in Hartford County where a motion to dissolve the temporary injunction was denied (*Malt-*

*bie, J.*), a demurrer to certain paragraphs of the answer was sustained *pro forma* (*Marvin, J.*), and upon defendants' refusal to further plead, judgment was entered for the plaintiffs, from which the defendants appealed. *Error and cause remanded for judgment for the defendants.*

Chapter 336 of the Public Acts of 1919, which is involved in this suit, is entitled "An Act providing for Payment to Discharged Soldiers, Sailors and Marines." By its terms, including amendments made in 1921 (Public Acts of 1921, Chap. 391, pp. 3408, 3409), the Treasurer of the State was "directed to purchase bonds or notes issued by the government of the United States . . . to the aggregate of not more than two and one-half million dollars as shall be found necessary to carry out the provisions of this Act, and to place the same in the custody and control of the board of control, which board is constituted a board of trustees of the fund so created. Said board shall administer said fund as required by the provisions hereof. . . . The interest accumulations of the fund so held in trust, or so much thereof as shall be found necessary to carry out the purposes hereinafter stated, shall be paid upon the order of the comptroller, upon such statements as he may require, to the treasurer of the organization of soldiers, sailors and marines, . . . which organization, when organized and perfected to the approval of said board of control, shall disburse the same. . . . Said payments of interest shall be made at such definite and stated periods as shall be necessary to meet the convenience of such organization and said board of trustees, but each payment shall be made on the order of the treasurer of such organization duly approved by at least two executive officers thereof or of a special committee of such organization thereunto specially authorized. No part of the interest accumulation of said fund shall be ex-

pended for the purpose of organizing or maintaining such organization or association so approved."

In § 2 it is declared that "all moneys so paid to and received by such organization shall be expended by it in furnishing food, wearing apparel, medical or surgical aid, care or relief, or in bearing the funeral expenses of soldiers, sailors or marines who entered any branch of the military service of the United States at any time between April 6, 1917, and November 11, 1918, inclusive," or the service of its allies, and who have been honorably discharged or released therefrom, "and who were citizens or resident aliens of the State at the time of entering the said armed forces of the United States or its allies, or to their widows, or dependent children under sixteen years of age who may be in need of the same. All such payments shall be made by such organization under authority of by-laws adopted or to be adopted by it, which by-laws shall include provisions for the determination of persons entitled to such aid and shall be approved by the board of control. The treasurer of such organization shall account to said board of trustees" at stated times "for all moneys disbursed by it."

The original complaint and writ, with a temporary injunction issued by a judge of the Superior Court, were served December 31st, 1921, and returnable on the first Tuesday of February, 1922. The original plaintiffs claimed the right to maintain the suit on the ground that they were taxpayers and possible beneficiaries of the trust fund created by the Act of 1919. On January 24th, 1922, the defendant made a motion that the temporary injunction be dissolved by the judge who issued it. At the hearing on this motion, Harvey P. Bissell asked to be joined as a party plaintiff, on the ground that he was Comptroller of the State and *ex officio* a member of the Board of Control. After the

hearing and after the return-day of the writ and complaint, the judge decided that the original plaintiffs had not sufficient interest to maintain their action, but that the Comptroller would have, if he were a plaintiff; and denied the motion to dissolve the temporary injunction in order to give the Comptroller an opportunity to be made a plaintiff by order of court. Afterward, Harvey P. Bissell, as Comptroller and member of the Board of Control, filed his motion to be made a party plaintiff, which was granted February 24th, 1922, and subsequently, the Governor, Treasurer, and Attorney-General, being the other members of the Board of Control, and The American Legion, Connecticut Department, and the Attorney-General *ex officio*, were joined as codefendants by order of the court. Thereafter, the plaintiff Bissell was permitted to file an amended complaint, setting out his official positions and consequent "duty of properly administering a certain fund" appropriated by the Acts of 1919 and 1921, and alleging that the defendant The American Legion, Connecticut Division, is the organization designated under the provisions of those Acts to disburse that fund; that the defendant Butterworth has been since July 1st, 1921, the treasurer of this organization, and as such treasurer has been the official designated to receive and disburse the interest accumulations of this fund; that the defendant The American Legion has not used all of the money received from this fund solely for food, wearing apparel, aid and funeral expenses of the persons entitled thereto by the provisions of the Acts of 1919 and 1921, but has paid the defendant Butterworth and authorized him to withdraw from these funds $300 a month since October 1st, 1921, "for his personal services in the performance of his duties in disbursing said funds"; that the defendant has so withdrawn and appropriated such sums as compensation for such services; and that both

of these defendants threaten to continue such acts. In paragraphs 6, 7 and 8 of his amended complaint, the plaintiff Bissell asserts that the entire amount of the interest of the fund provided by the Acts of 1919 and 1921 is now and will for a long time be necessary for expenditures for food and other aid, and for funeral expenses of the beneficiaries described therein; that he has already contributed part of the money contained in the fund and is liable to be taxed for any deficit due to the withdrawal of money therefrom for the purpose complained of; and that he is irreparably damaged by the acts and threats of the two defendants named in these allegations, and has no adequate remedy at law. He claims relief by way of injunction to restrain the two defendants named, and also a declaratory judgment, in the manner and effect above stated.

In their answer to this complaint, the defendants assert that they have expended all the money received in furnishing food and other assistance to the persons entitled thereto under the Acts of 1919 and 1921, deny paragraphs 6, 7 and 8, and admit the other material allegations. They also set up a special defense in which they aver that after the defendant The American Legion, Connecticut Division, had been approved by the Board of Control on December 2d, 1919, and requested to distribute the interest of the trust fund created by the Act of 1919, and in accordance with a requirement of that Act, the Legion adopted certain by-laws for the purpose of carrying its provisions into effect; that in these by-laws it was provided that a special committee should be appointed, consisting of the treasurer of the Legion, who should be chairman, and two other members, which should have full power, as the representative of the Legion and in co-operation with the Board of Control in such manner as that Board should direct, to dispose of all matters arising under said law,

and whose judgment should be final and conclusive in the management and disbursement of all moneys to be paid to it under the terms of that Act; and that a copy of these by-laws was filed with and approved by the Board of Control January 6th, 1920.

In paragraph 4 of the special defense, the defendants allege that on the day when the Board of Control approved the Legion as the organization to disburse the income of the trust fund, its executive committee passed the following vote: "*Voted:* On motion of Mr. Butterworth, that communication to the Board of Control accepting this trust should contain statement that it is the understanding of the Connecticut Department of The American Legion that The American Legion will be under no expense in the administration of the fund and that such expenses will be taken care of from the fund itself"; and that a copy of this vote was communicated to the Board of Control on December 15th, 1919.

In paragraph 10 of this defense, it is set up that the defendant Butterworth, under the specific authority and direction of the special committee appointed in accordance with the by-laws adopted and approved as stated above, and with the specific approval of the Board of Control, has personally received from the income of the trust fund $300 a month from October 1st to December 31st, 1921, which he has applied, as chairman of this special committee, and with the approval of this committee and of the Board of Control, as an expense of administering and disbursing the income from the trust fund.

In paragraph 11 of this defense, it is stated that the treasurer of the Legion, in compliance with the Acts of 1919 and 1921 and as required by the Comptroller, has rendered statements to the Board of Control in which the items of expense incurred in the administration

and disbursement of the income of the trust fund and paid out of such income were segregated, and these accounts were approved by the Board of Control.

The plaintiff Bissell demurred to paragraphs 4, 10 and 11 of this special defense because the Acts of 1919 and 1921 expressly and impliedly prohibit expenditures from the fund for the expense of maintaining The American Legion, Connecticut Department, and for the administration of the fund and the payment of salaries therefrom, and thereupon the court held *pro forma* that these paragraphs were insufficient.

*Frank E. Healy,* Attorney-General, for the appellants (defendants Governor Lake *et al.*).

*Arthur L. Shipman* and *Philo C. Calhoun,* for the appellants (defendants Butterworth *et al.*).

*Arthur E. Howard, Jr.,* and *John Buckley,* for the appellee (plaintiff).

BURPEE, J. The sole reason of appeal is the ruling of the court on the demurrer to the specified paragraphs of the special defense. The sufficiency of these paragraphs can be determined only by considering them in connection with the other parts of that defense, which were not denied, and all of which constitute a single plea of justification. *Molineux* v. *Hurlburt,* 79 Conn. 243, 64 Atl. 350. Although the Governor, Treasurer and Attorney-General of the State, as members of the Board of Control, and the Attorney-General as the representative of certain beneficiaries of the trust fund provided by the Act of 1919, have been made codefendants in the suit, they have not been pursued in the amended complaint nor involved in the judgment of injunction. Nor is any attempt made to restrain the Board of Control in any respect, although by the

terms of the Acts of 1919 and 1921 it is constituted a board of trustees to administer the fund created by those Acts. The amended complaint attacks only the acts of the defendant The American Legion, Connecticut Department, and its treasurer, the defendant Butterworth, because the former has paid and the latter withdrawn from the interest accumulations of the trust fund certain sums of money as compensation for his personal services in the performance of his duties in disbursing such accumulations, and because both defendants threaten to continue to do so; and the plaintiff claims that they be restrained from such action. These defendants admit these charges and set up in defense undisputed facts to justify their conduct. The plaintiff claims that these facts are insufficient to constitute a justification, because the Acts of 1919 and 1921 prohibit any expenditure from the trust fund (1) for the expense of maintaining The American Legion, Connecticut Department, and (2) for the administration of the fund and the payment of salaries.

We assume that the accumulations of the trust fund, rather than the principal of the fund, are intended in these pleadings. As to any expense for maintaining the Connecticut Department of The American Legion, it will be noted that it is a corporation chartered under a statute of the United States for specific purposes of its own, which it was organized to pursue independently of any legislation by the General Assembly of this State, and that to carry on such purposes it has chosen a treasurer to perform such duties and services as the corporation may require. Such work is done to keep up the corporation, and whatever it pays its treasurer for such work may properly be called an expense of maintaining the Legion. But our State laws and the by-laws which they required this corporation to adopt, when it had been selected as the organi-

zation to disburse the interest accumulations of the trust fund created for certain objects, imposed upon the person holding the office of treasurer the additional duty and service of receiving, disbursing and accounting for large sums of money, under exacting requirements and with burdensome details, and to furnish a large bond for the faithful performance of that particular duty. It does not appear that this extra work is necessary or adapted to keep up the Legion, or is done for its benefit, or that any compensation that may be paid for it will diminish in any measure the compensation paid by the corporation for the work it requires from its treasurer. It is true that the defendant Butterworth was called on to render these services because he was the person who then held the position of treasurer of the defendant corporation; but that fact does not affect the relations between the corporation and its treasurer, nor give the Legion any interest in or right to any part of the compensation for work done by Butterworth for another person and outside of the work required by the Legion. Indeed, it is asserted in the complaint and in the answer that he received the payments named for his personal services for the State, in administering and disbursing the money of the State, and to accomplish the purposes of the State. These facts dispose of any claim that Butterworth used any of this money for maintaining the Legion, and remove the ground of this reason of demurrer.

In the second reason, it is asserted that the Acts of 1919 and 1921 prohibit any expenditure of the income from the trust fund for the administration of the fund and the payment of salaries. Referring to the terms of these Acts, we find that the Board of Control is constituted a board of trustees of this fund, but it shall administer the fund as required by the provisions of those Acts. Those provisions require that

so much of the interest accumulations of the trust fund as shall be found necessary by this Board to carry out the purposes of these Acts shall be paid to the treasurer of an organization of soldiers, sailors and marines approved by the Board, and this organization shall distribute these interest accumulations and expend all moneys paid to and received by it for the benefit of certain soldiers, sailors and marines, under authority of by-laws adopted by such organization and approved by the Board. The Acts make no express provision to pay any expenses of the prescribed disbursements and administration. But the by-laws which have been adopted and approved, as required by the Acts, provide that a special committee of The American Legion shall co-operate with the Board of Control to carry into effect the purposes of the trust fund, and that its judgment, in such co-operation, shall be final and conclusive in the disbursement of all moneys that may be paid to the Legion for such purposes. Those purposes are evident, and unquestionably they cannot be accomplished without expense. The General Assembly did not impose this expense upon the board of trustees or upon the organization approved to devise the necessary methods, supervise the details and carry on this great service which the State had undertaken to supply. But certainly it did not intend that the trust should fail for lack of provision to pay the necessary expenses of its execution. Every Act of the legislature should be so construed as to give it force and effect to accomplish the manifest intention of the legislature. In this case, therefore, it must be held that the General Assembly intended that its agents should be allowed out of the income of the fund all reasonable charges and expenses necessary to carry out its directions concerning the trust and to prevent its failure. For it is a general principle of law, long prevailing in this and nearly all

of the United States, that a trustee is entitled to be reimbursed for all costs which he properly incurs in the execution of a trust, and to fair compensation for his time and trouble in managing the trust fund and performing the duties of an office he has undertaken for the benefit of others; and it is immaterial that no express provision for such charges and expenses has been made by the creator of the trust. *Kendall* v. *New England Carpet Co.*, 13 Conn. 383; *Clark* v. *Platt,* 30 Conn. 282; 3 Pomeroy's Eq. Jur. (4th Ed.) §§ 1084, 1085; 2 Perry on Trusts & Trustees (6th Ed.) §§ 910, 912, 918; 39 Cyc. 480; Lewin on Trusts (12th Ed.) pp. 785–788; *Schriver* v. *Frommel,* 183 Ky. 597, 210 S. W. 165. Justice Story has said: "Nor can any one reasonably expect any trustee to devote his time or services to a very watchful care of the interests of others when there is no remuneration for his services, and there must often be a positive loss to himself in withdrawing from his own concerns some of his own valuable time. . . . The policy of the law ought to be such as to induce honorable men, without a sacrifice of their private interest, to accept the office, and to take away the temtation to abuse the trust for mere selfish purposes as the only indemnity for services of an important and anxious nature." 3 Story's Eq. Jur. (14th Ed.) § 1676, note, p. 312.

We discover nothing in the Acts creating this trust that indicates that it was the intention of the General Assembly that these well-known general principles of law should not be effective in the administration of this trust. On the contrary, it is admitted that after the Legion had been designated under the Act of 1919 to disburse the income of this trust fund, it formally notified the board of trustees that it would undertake to perform the duty with the understanding that all necessary expenses would be taken out of the fund itself,

and it appears that that course was followed for more than a year. Then, with these facts within its knowledge, the General Assembly passed the Act of 1921, in which it did not change the provisions concerning the payment of this income to the Legion and its expenditure by the Legion. Furthermore, § 2 of the Act of 1921, which in this particular is identical with § 2 of the Act of 1919, requires that "all moneys so paid to and received by" the approved "organization shall be expended by it in furnishing food, wearing apparel" and other relief to certain soldiers, sailors or marines, or to their widows or certain children "who may be in need of the same." The language "in furnishing food, wearing apparel" and other relief intends much more than merely buying and paying for these necessaries. "Furnishing," in this context, means supplying those in need with what they need. It includes investigation to determine what persons are in need and entitled to aid, and what each person needs, and how and when he can be supplied. It requires not only the selection and purchase by a well-qualified person of a sufficient quantity of needed supplies, but also the distribution and delivery of these supplies in a shape fit for the use and relief of those who deserve them. We know that there are more than 83,000 persons who may become beneficiaries of this trust, and that they are scattered in many towns of the State. The necessary investigations must therefore be numerous, and each must be thorough and painstaking, in order to be just to the State and fair and helpful to every person in need. To do this work properly will require offices, typewriters, stationery, postage, telephones, travel, transportation, and other incidentals, and also the time and labor of agents and clerks, and perhaps most imperatively the services and supervision of a competent superintendent. That notwithstanding the voluntary services

of members of the Legion, these necessaries to the execution of the trust cannot be obtained without considerable expense, was a fact within the intelligent comprehension of the General Assembly when it passed these laws, and we assume that since it made no express provision to the contrary, it intended that out of the income of the trust fund which it established should be paid such charges and expenses as would be indispensable to carry on the trust it created in a manner which would accomplish its charitable objects and express in some measure the gratitude of the people of the State to their soldiers, sailors and marines in the World War. Under no other interpretation will these Acts be effective; for these burdens of administration can neither legally nor justly be imposed upon the American Legion, and it is not reasonable to expect that they be borne by a few private citizens who may be importuned to complete the work and discharge obligations which belong to all citizens in common and which the State has properly undertaken. It is the duty of courts to make every presumption of intendment in favor of the manifest object of the legislature and against the failure of this beneficent trust.

We do not find in these Acts, thus fairly construed, any express or implied prohibition against the payment out of the interest of this fund of the reasonable charges and expenses of its administration, including a fair compensation for the personal services of any person or persons charged with the duty of disbursing its interest accumulations. Whether this compensation be called salaries or by another name, is immaterial. It is in fact a proper item to be reckoned in the charges and expenses of executing the trust. The paragraphs of the answer to the amended complaint against which the plaintiff's demurrer was directed were sufficient. Upon the pleadings and admitted facts as they

appear in the record, the defendants were entitled to judgment.

There is error, the judgment is set aside, and the cause remanded to be proceeded with according to this opinion.

In this opinion the other judges concurred.