Thomas P. Kelly *vs.* Edward W. Dewey, Sheriff of Hartford County.

*Third Judicial District, New Haven, January Term, 1930.

Wheeler, C. J., Maltbie, Haines, Hinman and Banks, Js.

*Transferred from the First Judicial District.

Argued January 30th—decided March 31st, 1930.

*Donald Gaffney,* with whom was *Hugh M. Alcorn,* for the appellant (defendant).

*Francis P. Rohrmayer,* with whom, on the brief, was *Abraham A. Katz,* for the appellee (plaintiff).

HAINES, J. The facts of this proceeding are not in dispute. The plaintiff was convicted on June 18th, 1928, by the City Police Court of Hartford, of operating a motor vehicle while under the influence of liquor. He was again convicted in the same court on October 12th, 1929, of a second offense, and sentenced and committed to the Hartford County jail for a period of six months. On December 31st, 1929, a judge of that court issued an order purporting to suspend the jail sentence so imposed and issued an order purporting to place the plaintiff in the custody of the probation officer of that court for one year, and caused the facts to be made a part of the record in the case. The order was directed to the sheriff of Hartford County, who refused to recognize it. The plaintiff thereupon prayed out a writ of habeas corpus which was issued by the Superior Court for Hartford County. The

return made by the defendant in obedience to this writ, set up the provisions of Chapter 285 of the Public Acts of 1929, and alleged that the plaintiff was held by the respondent under a mittimus which directed the plaintiff's confinement for six months from and after October 12th, 1929, following a conviction of the plaintiff for operating a motor vehicle while under the influence of liquor, second offense, and averring that the judge of the City Police Court of Hartford was without authority or jurisdiction to suspend the execution of that sentence and order the plaintiff to be placed upon probation for one year in the custody of a probation officer. To this return the plaintiff demurred on the ground that the provisions of the statute referred to, and especially § 2 thereof, showed that the judge did have power to suspend the execution of the sentence and make the order for probation, and that the return was therefore insufficient. The statute in question, Chapter 285 of the Public Acts of 1929, appears in the footnote.

AN ACT AMENDING AN ACT CONCERNING THE SUSPENSION OF EXECUTION OF SENTENCE.

Be it enacted by the Senate and House of Representatives in General Assembly convened:

Section 1. Chapter 62 of the public acts of 1923 is amended to read as follows: Any criminal court in any case within its jurisdiction, except in cases of commitment to the state prison, may impose sentence and suspend the execution thereof indefinitely, when the mitigating circumstances clearly justify such action, and, upon such suspension, the court shall forthwith cause to be spread upon its records the reasons upon which such action is based, provided the court shall, in no case, suspend the execution of the sentence of an accused convicted of operating a motor vehicle while under the influence of intoxicating liquor if such offense shall have been committed within a period of six years immediately following such final conviction of a like offense by a court of this state, or by a person convicted of a felony if it shall appear that he has twice been previously convicted of a felony.

Sec. 2. Chapter 71 of the public acts of 1919 as amended by

These opposing views raise the only question presented by this appeal, and its solution requires at our hands a construction of this Act.

There are certain well known and fundamental rules governing the construction of statutes, the primary one being that the purpose and intent of the legislature shall be ascertained, and if possible made effective. "The intention of the legislature should control absolutely the action of the judiciary; where that intention is clearly ascertained, the courts have no other duty to perform than to execute the legislative will, without any regard to their own views as to the wisdom or justice of the particular enactment." Sedgwick on Construction of Statutory Law (2 Ed.) p. 325. "You do not legislate but ascertain the purpose of the legislature; and if you can discover what that purpose was, you are bound to enforce it, although you may not approve the motives from which it springs, or the objects which it aims to accomplish." Beal's Cardinal Rules of Legal Interpretation (3d Ed.) p. 307, § 3. "The statute law is the will of the legislature; and the object of all judicial interpretation of it is to determine what intention is conveyed, either expressly or by implication, by the language used, so far as it is necessary for determining whether the par-

chapter 175 of the public acts of 1921 is amended to read as follows: In cases within its jurisdiction, except in cases after commitment to the state prison or to the Connecticut reformatory, any criminal court or the judge holding such court may during or after the adjournment of the session at which such commitment was issued, after hearing, continue the case or suspend the execution of the sentence and commit the accused to the custody of a probation officer or to the custody of a probation officer pro tempore, to be appointed by such judge, for such time not exceeding one year as the court may fix, and thereupon the court or judge shall cause the facts upon which such action is based to be made a part of the record of such case.
Approved June 6, 1929.

ticular case or state of facts presented to the interpreter falls within it." Endlich on Interpretation of Statutes, pp. 1-3. "The intent is the vital part, the essence of the law, and the primary rule of construction is to ascertain and give effect to that intent." Lewis' Sutherland Statutory Construction (2d Ed.) p. 693; *United States* v. *Chase*, 135 U. S. 255, 10 Sup. Ct. 756; *Hartford* v. *Hartford Theological Seminary,* 66 Conn. 475, 34 Atl. 483; *Newton's Appeal,* 84 Conn. 234, 241, 79 Atl. 742; *Bridgeman* v. *Derby,* 104 Conn. 1, 8, 132 Atl. 35; *State ex rel. Stamford* v. *Board of Purchase and Supplies,* 111 Conn. 147, 149 Atl. 410.

The plaintiff rests his claim that the action of the judge of the City Police Court of Hartford was legally authorized, upon § 2 of Chapter 285 of the Public Acts of 1929, saying that sections one and two of the Act "are entirely separate and distinct and have nothing whatsoever to do with each other . . . it was not the intention to limit the power of the court in § 2, to the extent that the court could not suspend the execution of the sentence and place on probation in a case similar to the present one."

Let us examine the position the plaintiff thus takes. Under § 1, literally construed, it is quite apparent that the sentence of this plaintiff could not be suspended; it is specifically forbidden. "The court shall, in no case, suspend the execution of the sentence of an accused convicted of operating a motor vehicle while under the influence of intoxicating liquor if such offense shall have been committed within a period of six years."

Under § 2, also literally construed, and if standing alone and independent of any other legislation on the same subject, the court was permitted, except in State prison and reformatory cases, "during or after the adjournment of the session at which such commitment

was issued, after hearing, [to] continue the case or suspend the execution of the sentence and commit the accused to the custody of a probation officer."

The logic of the plaintiff's position then is this: that the two sections of this Act should be read and construed literally, and that they stand separate and distinct from each other, but of equal legislative effect; that the legislature intended by the first section, to forbid the release of drunken drivers guilty of second offense; that it intended by the second section, to permit the release of such drivers; that the second section leaves the law on this particular subject, where it stood before; that though the obvious intent shown in the first section, was to adopt the change recommended by the Judicial Council, it was also the intent to defeat that result by the provisions of the second section of the same Act.

The claim that the two sections of Chapter 285 should be read and construed as separate and distinct, cannot be sustained by any sound rule of statutory construction. The Act is a substitute for, and a repeal of, all prior legislation to which it specifically refers. We must look upon it as a single piece of new legislation enacted as a substitute for the prior provisions.

This conclusion results from another well known rule of construction which is that all parts of an Act are to be construed together, and it is not permissible to rest the construction upon any one part alone. The general intention is the key to the whole Act, and the intention of the whole controls the interpretation of all its parts. Endlich on Interpretation of Statutes, p. 44; Sedgwick on Statutory Construction (2d Ed.) pp. 209, 210; 2 Lewis' Sutherland Statutory Construction (2d Ed.) pp. 659, 712; 25 R. C. L., p. 1009; *United Society* v. *Eagle Bank*, 7 Conn. 456-470; *Bissell* v. *Butterworth*, 97 Conn. 605, 615, 118 Atl. 50; *New*

*Haven Orphan Asylum* v. *Haggerty Co.,* 108 Conn. 232, 239, 142 Atl. 847; *Hartford Builders Finish Co.* v. *Anderson,* 99 Conn. 343, 352, 122 Atl. 76; *Little Rock & F. S. R. Co.* v. *Howell,* 31 Ark. 119; *Atkins* v. *Disintegrating Co.,* 85 U. S. (18 Wall.) 272; *Thompson* v. *Bulson,* 78 Ill. 277; *Gates* v. *Salmon,* 35 Cal. 576; *Davey* v. *Burlington, C. R. & M. R. Co.,* 31 Iowa, 553; *Berry* v. *Clary,* 77 Me. 482, 1 Atl. 360; *State ex rel. Kelly* v. *Mayor,* 35 N. J. L. 196; *Holl* v. *Deshler,* 71 Pa. St. 299; *Catlin* v. *Hull,* 21 Vt. 152.

A legitimate and often helpful means of determining the legislative intent, is to examine the history and derivation of the Act, and consider the circumstances and conditions known to the legislature at the time of its enactment. *Mattoon's Appeal,* 79 Conn. 86, 87, 63 Atl. 784; *Quinebaug Bank* v. *Tarbox,* 20 Conn. 510, 518.

The first legislation in this State on the subject of suspended sentences and probation, was Chapter 126 of the Public Acts of 1903, which provided for the appointment of probation officers and gave power to "any court" to pronounce sentence and suspend execution and commit the accused to the probation officer for not more than one year. An exception was made of State prison crimes. This was amended by Chapter 142 of the Public Acts of 1905, leaving out the provision as to State prison crimes, and these provisions remained until 1907, when a judge was given the authority after the term of court had closed. This was again amended by Chapter 106 of the Public Acts of 1911, but with no change pertinent to the present question. It was again amended by Chapter 56 of the Public Acts of 1915, and the exception of State prison and reformatory cases was again made, the Act then taking substantially the same form in which it appears in § 6671, Rev. 1918. This was again amended by

Chapter 71 of the Public Acts of 1919, making verbal changes regarding State prison and reformatory prisoners. Another amendment was made by Chapter 175 of the Public Acts of 1921, without any change affecting this inquiry, and this was followed by the present § 2 of Chapter 285 of the Public Acts of 1929 which we are considering.

In Chapter 62 of the Public Acts of 1923, power was given to any criminal court to "impose sentence and suspend . . . [its] execution . . . indefinitely in any case within its jurisdiction." This was amended in 1929 and became § 1 of Chapter 285 of the Public Acts of 1929.

The chronology of these sections shows that at the time Chapter 285 was enacted, there were two existing statutes which provided as follows:

"In cases within its jurisdiction, except in cases after commitment to the state prison, or state reformatory, any criminal court or the judge holding such court may, during or after the adjournment of the terms, after hearing, continue the case or suspend the execution of the sentence and commit the accused to the custody of a probation officer or to the custody of a probation officer pro tempore, to be appointed by such judge, for such time not exceeding one year as the court may fix." Public Acts of 1921, Chap. 175.

"Any criminal court may impose sentence and suspend the execution thereof indefinitely in any case within its jurisdiction. Such court may order brought before it any person upon whom such sentence has been imposed who shall be convicted, within one year from the date thereof, of any crime, and may revoke such suspension, whereupon such sentence shall be in force." Public Acts of 1923, Chap. 62.

By Chapter 190 of the Public Acts 1927, a "judicial council" was created by the legislature "for the con-

tinuous study of the organization, rules and methods of procedure and practice of the judicial system of the State, the work accomplished and the results produced by that system and its various parts." In its first report to the Governor of this State, after discussing the selection of jurors and the appointment of the judges of the city, town and borough courts, extended consideration is given to what is termed "the abuse of the suspension of sentence." In opening that discussion the report first makes specific reference to the two statutory provisions which we have quoted. Characterizing these as broad powers and pointing out the serious consequences of their abuse, the report continues: "It is, however, a matter of common knowledge that some city, town and borough courts are imposing fines, or fines with a suspended jail sentence, in many cases involving second, third and fourth offenses, rather than a jail sentence with a possibility of an appeal and loss of fine to city or town. We have particularly in mind the driving of an automobile under the influence of intoxicating liquor, transportation of liquor in violation of law and the reckless driving of motor vehicles. The second and third violation of these crimes ought not to be treated as lightly as our city, town and borough courts frequently treat them, penalizing the violation by a fine, or a fine with a suspended jail sentence. The driver of a motor vehicle who is under the influence of intoxicating liquor is a menace to every vehicle he may meet on the road. In every such case unless the mitigating circumstances are very exceptional such a driver when convicted of this offense should be committed to jail and his license revoked and the license not renewed until the Commissioner of Motor Vehicles is fully satisfied that the driver is in no likelihood of again becoming under the influence of intoxicating liquor." After the discussion

of some other features of the situation, the following recommendation was made: "That the said Public Acts of 1921 and 1923 be amended by providing that the provisions of said Acts shall not permit the suspension of the execution of the sentence of a person convicted of operating a motor vehicle while under the influence of intoxicating liquor if such offense was committed within a period of six years immediately following final conviction of a like offense by a court of this State, or by a person convicted of a felony if it shall appear that he has been previously convicted two times of any felony. These provisions, if enacted into law will tend to stop, in large part, the abuse of the suspended sentence as now practiced and tend to rid our highways of many drivers of motor vehicles who continually imperil all other users of the highway. The safety of Society and the safety of the traveling public upon our highways will be promoted by the passage of the proposed Acts."

The legislature thus had before it in the session of 1929, the law as it then existed, the serious public evil which was permitted by that law, and a recommendation by an official body created by the legislature itself, looking toward a remedy. A comparative reading of Chapter 285 which the legislature thereupon passed, particularly section one, and the recommendation of the Judicial Council, makes it too clear for argument that the legislature intended to adopt that recommendation. The general effect of the provisions of section one which follow the language of the recommendation almost verbatim, was to prevent the release of a driver twice convicted of driving under the influence of liquor. It thus aimed to, and did, accomplish the remedy suggested. Can it be thought that in adding § 2, the legislature intended to render the provisions of § 1 ineffective? The reasonable, and we think

the only explanation of the seemingly conflicting language of the two sections is, that in the endeavor to preserve the general authority of the courts to suspend sentences and give probation, the effect of the exception which had just been made, was not sufficiently considered.

We are satisfied therefore, from the history of this legislation to which we have called attention, that it was clearly intended by the legislature to remedy the evil to which its attention had been called. "When changes have been introduced by amendment it is not to be assumed they are without design." *Stamford* v. *Stamford*, 107 Conn. 596, 606, 141 Atl. 891. The literal reading of section two, makes the clear intent of section one ineffective. How then are we to construe Chapter 285 as a whole? "The literal construction . . . has in general but a prima facie preference. To arrive at the real meaning, it is always necessary to take a broad general view of the Act, so as to get an exact conception of its aim, scope and object. It is necessary, according to Lord Coke, to consider, (1) What was the law before the Act was passed, (2) What was the mischief or defect for which the law had not provided, (3) What remedy the legislature had appointed, and (4) the reason of the remedy. . . . The true meaning of any passage is to be found not merely in the words of that passage, but in comparing it with every other part of the law, ascertaining also what were the circumstances with reference to which the words were used, and what was the object appearing from those circumstances, which the legislature had in view, and what were the cause and occasion for the passage of the Act, and the purpose intended to be accomplished by it, in the light of the circumstances at the time, and the necessity of its enactment. . . . If possible, a statute must be so construed as to make

it effect the purposes for which it was intended."
Endlich on Interpretation of Statutes, pp. 35-37;
*Stapleberg* v. *Stapleberg,* 77 Conn. 31, 35, 58 Atl. 233;
*Mulcahy* v. *Mulcahy,* 84 Conn. 659, 662, 81 Atl. 242;
*Wooley* v. *Williams,* 105 Conn. 671, 673, 136 Atl. 583.
Satisfied therefore that the legislative intent in enacting Chapter 285 was to except cases like the present
from the operation of the suspended sentence and the
probation law, how are we to construe § 2 of the Act?

This section is the final word of the legislature which
conferred upon our criminal courts the right of suspending sentence and giving probation. We have
traced its progress from 1903 to the present time. It
is a broad general grant of power. Throughout its history, the only restrictions aimed at are State prison
and reformatory sentences. Coming to the session of
1929, it is apparent to us that the legislature clearly
sought to impose other restrictions in response to a
suggestion and to curb an existing evil of magnitude.
That was done by a specific and express provision
which is section one of this Act. The net result was a
chapter containing both a restatement of the general
powers and the restrictions aimed at by a specific exception. We have to deal therefore with one section
which is general and at the same time, one that is
specific, the latter covering a matter which is within
the general powers. The rule of statutory construction under such circumstances is well established.

"Where there are two provisions in a statute, one of
which is general and designed to apply to cases generally, and the other is particular and relates to only
one case or subject within the scope of a general provision, then the particular provision must prevail;
and, if both cannot apply, the particular provision
will be treated as an exception to the general provision." 2 Lewis' Sutherland Statutory Construction

(2d Ed.) pp. 744, 745, § 387, also p. 661, § 346; *Hoey* v. *Gilroy,* 129 N. Y. 132, 29 N. E. 85; *Wormser* v. *Brown,* 149 N. Y. 163, 43 N. E. 524; *Martin* v. *Election Commissioners,* 126 Cal. 404, 58 Pac. 932; *State ex rel. Douglas County* v. *Cornell,* 53 Neb. 556, 74 N. W. 59; *Hayes* v. *Arrington,* 108 Tenn. 494, 68 S. W. 44. "So where there are in an Act, specific provisions relating to a particular subject, they must govern in respect of that subject, as against general provisions in other parts of the statute, although the latter, standing alone, would be broad enough to include the subject to which the more particular provisions relate." Endlich on Interpretation of Statutes, p. 288, § 216. "If there are two Acts or two provisions in the same Act, of which one is special and particular, and clearly includes the matter in controversy, whilst the other is general and would, if standing alone, include it also; and if, reading the general provisions side by side with the particular one, the inclusion of that matter in the former would produce a conflict between it and the special provisions—it must be taken that the latter was designed as an exception to the general provision." Endlich on Interpretation of Statutes, pp. 288, 289, § 216; *Crane* v. *Reeder,* 22 Mich. 322; *State* v. *Commissioners of Railroad Taxation,* 37 N. J. L. 228; *Felt* v. *Felt,* 19 Wis. 208; *Wardell* v. *Killingly,* 97 Conn. 423, 433, 117 Atl. 520; *Kepner* v. *United States,* 195 U. S. 100, 125, 24 Sup. Ct. 797.

The application of this rule in the construction of the Act before us, furnishes the solution of our problem, and we accordingly hold that the second section is a grant of general powers and covers all cases within its terms, save and except such as are specially excepted by the specific provisions of section one. It follows that it was error to sustain the order of the judge of the City Police Court of Hartford.

There is error and the case is remanded to the Superior Court with direction to enter judgment for the defendant.

In this opinion WHEELER, C. J., and BANKS, J., concurred.

HINMAN, J. (dissenting). My inability to concur in the majority opinion of course is not due to disagreement with the desirability of the result attained by the construction which it accords to § 2 of Chapter 285 of the Public Acts of 1929, but it springs from a conviction that such a construction is precluded by fundamental and controlling rules of law which should not be sacrificed or transgressed in order to effect a result deemed desirable in an individual case. In the construction of statutes the intent is to be sought, first of all, in the words and language employed, and if the words are free from ambiguity and doubt there is no occasion to resort to other means of interpretation. *Swits* v. *Swits,* 81 Conn. 598, 599, 71 Atl. 782; *McKay* v. *Fair Haven & W. R. Co.,* 75 Conn. 608, 611, 54 Atl. 923; 2 Lewis' Sutherland Statutory Construction (2d Ed.) § 367. Our concern is, not what did the legislature intend to say, but what is the intent expressed by what it did say. *Connelly* v. *Bridgeport,* 104 Conn. 238, 249, 132 Atl. 690; *Chamberlain* v. *Bridgeport,* 88 Conn. 480, 490, 91 Atl. 380; *State* v. *Faatz,* 83 Conn. 300, 305, 76 Atl. 295; *Walsh* v. *Bridgeport,* 88 Conn. 528, 534, 91 Atl. 969. "We must construe the Act as we find it, without reference to whether we think it would have been or could be improved by the inclusion of other provisions." *Murphy* v. *Way,* 107 Conn. 633, 639, 141 Atl. 858; *State ex rel. Lewis* v. *Turney,* 97 Conn. 496, 504, 117 Atl. 499; *Corbin* v. *American Industrial Bank & Trust Co.,* 95 Conn. 50, 110 Atl. 459. If the language is unambiguous "the judiciary is

powerless to intervene even to remedy a mistake. To attempt to do so would be a palpable exercise of legislative functions." *McKay* v. *Fair Haven & W. R. Co.*, *supra*, p. 611. The provisions of the Act under consideration are not ambiguous; the language of each section is so clear as to leave no room for question as to the meaning expressed thereby. Hence the above rules are applicable and controlling and those by which resort may be had to inferences and extraneous aids where the intention is not clearly expressed by the language used are not available.

There is a further reason why the present case does not afford appropriate occasion for application of the rule, invoked and principally relied upon by the majority opinion, by which, in construing an Act covering, in a single enactment, an entire subject, all its component parts are to be considered together "upon the assumption that the law was intended to be read as a whole with each provision in harmony with every other." *New Haven Orphan Asylum* v. *Haggerty Co.*, 108 Conn. 232, 239, 142 Atl. 847. Enactments to which this rule applies are illustrated by the mechanics' lien law, involved in the case just cited and in *Hartford Builders Finish Co.* v. *Anderson*, 99 Conn. 343, 122 Atl. 76, and the Act of 1919 providing for payment to discharged soldiers, sailors and marines, involved in *Bissell* v. *Butterworth*, 97 Conn. 605, 118 Atl. 50,—the Connnecticut cases upon which the majority rely on this point. The Act now under consideration (Chapter 285 of the Public Acts of 1929) amended, by separate sections, statutes which are not only physically separate but are distinct in reason and purpose. Chapter 175 of the Public Acts of 1921, which was amended by § 2 of the 1929 Act, originated as one section of the general probation Act of 1903, and was

so retained in the Revision of 1918. The Act of 1923 (Chapter 62) amended by § 1 of the 1929 Act obviously was passed to meet a different situation and serve a distinct purpose—to permit courts to suspend execution of sentence, without commitment to a probation officer (which was mandatory when sentence was suspended under the probation Act) substituting for probation the revocation of the suspension upon another conviction within the year. Otherwise there would have been no occasion for passing the 1923 Act.

The fact that the 1929 amendments of these two separate statutes were effected by including them in one chapter is without apparent significance other than convenience and that they pertained to related subjects. Each of these sections is complete in itself and, so far as appears, covers the entire subject-matter intended; each should be construed independently so far as concerns reading, by implication, provisions of one into the other. Plainly the intent expressed in the amendment of the 1923 Act was both to except the specified cases from those in which sentence could be suspended without probation under the Act of 1923, and to require that in other cases suspension be justified by circumstances, made a matter of record. It is equally clear that the only addition to the probation Act which § 2 manifests an intent to make is to require the facts upon which the continuance or suspension is based to be made a matter of record. A belief, on our part, that the same exceptions should have been embodied in the latter statute as in the former, or even an assumption that the General Assembly so desired and intended, does not enable us to insert it by implication. To do so transgresses the limits of a proper exercise of judicial powers and constitutes an invasion of functions which are distinc-

tively legislative. *McKay* v. *Fair Haven & W. R. Co.,* *supra.*

In this opinion MALTBIE, J., concurred.