On November 15, 1950, Roosevelt Baker was convicted in the Hartford Police Court of a statutory violation and sentenced to six months in jail on one count, and thirty days in jail on each of two other counts. Execution of the jail sentence was indefinitely suspended on all three counts. There was no commitment to the custody of a probation officer. On January 25, 1952, the said Baker was again convicted in the same court, at which time the jail sentence imposed on November 15, 1950, to the extent of six months was put "in effect" and the said Baker was delivered to the jail, together with a mittimus dated January 25, 1952, directing imprisonment in said jail "for the period of six months in effect from this date ... or be otherwise discharged by order of the law." The court also imposed a new sentence of six months in jail, the execution of the jail sentence being again indefinitely suspended. *Page 445 
On February 7, 1952, this judgment was reopened and erased on motion of the accused, who had then retained counsel. The case was retried on February 7, 1952, resulting in conviction on the same day and imposition of precisely the same sentence which had been imposed on January 25, 1952. Baker was again delivered to the jail with a mittimus dated February 7, 1952, directing imprisonment in said jail "for the period of 6 months in effect from this date ... or be otherwise discharged by order of the law."
The mittimus dated January 25, 1952, is no longer effective, since the judgment upon which it is based has been erased. It is from the confinement under direction of the mittimus dated February 7, 1952, that the said Roosevelt Baker seeks to be released. This results from the revocation by the Police Court of Hartford of the suspension of a jail sentence imposed upon him on November 15, 1950, the execution of which was at that time indefinitely suspended. The question presented is whether under the law the court had power to revoke the suspension.
The power of criminal courts in this state to suspend execution of sentences is contained in General Statutes, § 8836. Under this section any criminal court, or the judge holding such court, except in cases after commitment to the state prison or reformatory, or of conviction of operating a motor vehicle while under the influence of intoxicating liquor, second offense within six years, or conviction of a felony, third offense, has the power in any case within its jurisdiction, after hearing, to suspend the execution of the sentence and commit the accused to the custody of a probation officer "for such time not exceeding two years as the court may fix, or, when the mitigating circumstances clearly justify such action, suspend the execution of the sentence indefinitely without committing the accused to the custody of a probation officer, and thereupon the court or judge shall cause the reasons upon which such action is based to be made a part of the record of such case."
The only statutory provision now governing the revocation of suspensions is found in General Statutes § 8837. This provides for revocation of suspension of the execution of a sentence only in the case of offenders who have been committed to the custody of a probation officer. Since there is no statutory provision for revocation of an indefinite suspension where the offender has not been committed to the custody of a probation officer, the right to revoke such an indefinite suspension would exist only *Page 446 
by implication arising from the power to suspend. The legislature has specifically dealt with this subject of suspensions and revocations of jail sentences and has granted to the courts such powers as it intended to have exercised. (Belden v. Hugo,88 Conn. 500, 506), therefore the question is not as to the inherent powers of courts to suspend sentences and revoke suspensions, as might be the case in some jurisdictions where no such enabling legislation exists. Since legislation on this subject also exists, we may properly examine it to determine what intention is conveyed, either expressly or by implication, by the language used. The intention of the legislature is controlling and where that intention is clearly ascertained the duty of the court is to execute the legislative will. Kelly v. Dewey, 111 Conn. 281. A means of determining legislative intent is to examine the history and derivation of the act and consider the circumstances and conditions known to the legislature at the time of its enactment.Mattoon's Appeal, 79 Conn. 86, 87; Kelley v. Dewey,
supra, 287.
The first legislation in this state on the subject of suspended sentences and probation was chapter 126 of the Public Acts of 1903, which provided (§ 4) for the appointment of probation officers and gave power to "any court" to pronounce sentence and suspend execution and commit the accused to the probation officer for not more than one year. An exception was made of state prison crimes. This was amended by chapter 142, § 4, of the Public Acts of 1905, leaving out the provision as to state prison crimes. Chapter 1, § 1, of the Public Acts of 1907 gave authority to a judge after the term of court had closed. The amendment of 1911 Public Acts, 1911, c. 106, made no changes pertinent to the present question, but the amendment by chapter 56 of the Public Acts of 1915 again excepted state prison and reformatory cases. The subject of rearrest and revocation of a suspended sentence, written in 1903 and 1905 as a section (§ 5) of chapters 126 and 142, respectively, was designated as chapter 64 of the Public Acts of 1915. All of these acts took form as §§ 6671 and 6672 of the 1918 Revision to the General Statutes. Amendments in 1919 (c. 71) and 1921 (c. 175) were without change important to the present inquiry.
The amendment of 1923 (Public Acts 1923, c. 62) did, however, bring about a radical change. Up to this time, there had been no provision for revocation of a suspended sentence except in the case of an accused who was in the custody of a probation *Page 447 
officer. In 1923, power was given to any criminal court not only to impose sentence and suspend its execution indefinitely in any case within its jurisdiction but also "Such court may order brought before it any person upon whom such sentence has been imposed who shall be convicted, within one year from the date thereof, of any crime, and may revoke such suspension, whereupon such sentence shall be in force."
By chapter 190 of the Public Acts of 1927, a "judicial council" was created by the legislature for the continuous study of the organization, rules and methods of procedure and practice of the judicial system. In its first report, extended consideration was given to what was termed "the abuse of the suspension of sentence." The report and recommendations of the judicial council were before the legislature when it enacted chapter 285 of the Public Acts of 1929, by which chapter 62 of the Public Acts of 1923 was repealed. Legislation was adopted substantially as it exists today, which, with amendments in 1931 (Cum. Sup. 1935, § 1725c) and 1939 (Cum. Sup. 1939, § 1463e) form the present §§ 8836 and 8837 of the 1949 Revision.
When changes in legislation have been introduced by amendment, it is not to be assumed that they are without design. Stamford
v. Stamford, 107 Conn. 596, 606; Kelly v. Dewey,111 Conn. 281, 291. The 1923 act is the only enactment in the history of this legislation granting power to the court to revoke an indefinite suspension where the accused is not in the custody of a probation officer, and this act was repealed in 1929 at a time when the legislature was particularly concerned with the subject matter. It is a reasonable conclusion that the legislature intended to put an end to the authority granted in the act which it repealed and to substitute the new act as its will on the subject.
In Masucio v. Platt, 8 Conn. Sup. 188, 192, it was held byMellitz, J., that "The right to revoke an indefinite suspension is useful only to aid in controlling the future conduct of the offender, and as such it becomes an instrument employed in an effort to reform him. In our probation statutes the Legislature has adopted a method to give persons convicted of crime an opportunity to reform, and in view of this expressed policy of the legislation of this state, employment of the power of indefinite suspensions for reformatory purposes is unwarranted. *Page 448 
"The aim of our probation statutes is reformatory and to bring an offender `who has fallen into evil ways under oversight and influences which may lead him to a better living.'Belden v. Hugo, [88 Conn. 500, 504]. Where the circumstances warrant an effort toward reformation of the offender, no limitation is placed upon the right of the court to exercise its power to suspend execution. Possessing the right to revoke the suspension, the court is authorized to say that the offender will be required to serve his sentence unless his conduct, during the period of probation, conforms to a prescribed standard. This period is now limited by statute to two years. After the expiration of the period of probation, and without regard to any future misconduct, the offender is no longer in danger of a revocation of the suspension and of being required to serve such sentence. This is the method prescribed by the Legislature for dealing with offenders whose prior conduct may indicate the desirability of reformatory measures.
"On the other hand the Legislature has recognized that the existence of mitigating circumstances may warrant the complete suspension of sentence in some instances where an offense, although requiring the imposition of a particular sentence, has been committed by one whose prior conduct does not point to the likelihood that he will again find himself in mischief, and the need for reformatory measures is not indicated. The power of suspension in such cases has been expressly limited by the Legislature to cases where `the mitigating circumstances clearly justify such action.' To further guard against the capricious exercise of the power of suspension in such cases, it is also expressly provided that upon such suspension, the court shall cause to be spread upon its records the reasons upon which such action is based. The court is thus authorized in a proper case to say that while the offense merits the sentence which is being imposed, the mitigating circumstances and the prior conduct of the offender justify an indefinite suspension of execution, permitting the offender to go without danger of being required to serve the sentence at some future time."
Before the enactment of chapter 62 of the Public Acts of 1923 and since its repeal it was not the legislative intent to authorize a court to revoke an indefinite suspension of a sentence where the accused was not placed in custody of a probation officer, nor to place an offender in the position of being in effect on probation for life and in danger of being required *Page 449 
to serve a sentence at some indefinite future time without regard to how exemplary his conduct may have been in the intervening period. The statutes do not authorize the courts to impose such punishment, nor is it to be implied to exist in the face of the present legislation on the subject. Belden v.Hugo, 88 Conn. 500, 505.
Any criminal court, or the judge holding such court, may, subject to the limitations and exceptions set forth in § 8836, Rev. 1949, when the mitigating circumstances clearly justify such action, suspend the execution of the sentence indefinitely without committing the accused to the custody of a probation officer and thereupon shall cause the reasons upon which such action is based to be made a part of the record of such case; and it is concluded that when such execution is so suspended no right of revocation exists.
The revocation on February 7, 1952, of the indefinite suspension of a six months' jail sentence imposed on November 15, 1950, was beyond the power of the Hartford Police Court. The demurrer is sustained on the ground that no right of revocation of the suspended sentence of November 15, 1950, exists. The writ of habeas corpus is sustained and the said Roosevelt Baker is ordered discharged from the custody in which he is now held by virtue of mittimus dated January 25, 1952, and mittimus dated February 7, 1952, both signed by John W. Newman, assistant clerk of the City and Police Court of the city of Hartford.
 The question of detention based upon the appeal mittimus dated February 8, 1952, is not presently before this court.