CITY OF STAMFORD vs. TOWN OF STAMFORD.

Third Judicial District, New Haven, January Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

The intention of the legislature, which is the fundamental guide in the construction of statutes, must be ascertained from the language itself if that is plain; but when it is doubtful the true meaning is to be gathered by considering the Act in the light of all its provisions, the object sought to be accomplished, pre-existing legislation upon the same subject and other relevant circumstances.

The letter of a statute may not prevail against the legislative intent when that is plainly indicated and definitely ascertained.

A statute which is amended and re-enacted after a judicial con-

Stamford *v.* Stamford.

struction has been placed upon it, must be presumed to have been drafted in the light of such construction.

Chapter 111 of the Public Acts of 1923 was amended by Chapter 162 of the Public Acts of 1925 which provides, in part, that "no town or consolidated town and city, either by itself or by any political or territorial division or divisions thereof shall incur any indebtedness through the issuance of bonds which shall cause the aggregate net indebtedness of such town or city to exceed five per centum of its grand list, unless otherwise provided by Special Act." *Held:*

1. That a "consolidated town and city," within the meaning of this statute, is one in which the original town organization and government and that of a city territorially coterminous with or contained within it, have been combined by charter in, and superseded by, a single municipal government exercising the administrative and other powers and assuming the duties formerly vested in and imposed upon both.

2. That the town and city of Stamford, which are independent political entities with separate and distinct forms of government, offices and officials, the town being charged with the construction, maintenance and management of schools, charities and bridges within and without the city limits in addition to its general governmental functions beyond those limits, and the city having similar powers and duties with reference to highways, sewers, drains, police and fire protection, sanitation and health within its own area, which is only twenty-four per cent of the area of the town, do not constitute a "consolidated town and city," but that the city is, at least territorially, a division of the town.

3. That the basis for determining the maximum limit upon the bonded indebtedness of the town, was the aggregate bonded indebtedness of both town and city as compared with their aggregate grand lists.

4. That the difference in wording between the Act of 1925 and that of 1923 unquestionably indicated an intent on the part of the General Assembly to overcome the construction placed by this court in 1924 upon the earlier statute in the case of *Russell* v. *Middletown City School District,* 101 Conn. 249, under which the city of Stamford would not have been regarded as a subdivision of the town.

5. That §271 of the charter of the city of Stamford, adopted in 1915, which limits its bonded indebtedness to three and one half per centum of its grand list, is so palpably inconsistent with, and repugnant to, the Act of 1925 in so far as it purports to authorize an aggregate bonded indebtedness of both town and city in excess of five per centum of their aggregate grand lists that it must be deemed to have been repealed by implication to that extent;

and that its only present effect is to restrict the permissible indebtedness of the city to the lower percentage even though the aggregate indebtedness of both town and city is less than that authorized by the general statute.

6. That sinking funds reserved and pledged by either the town or the city for the payment of its existing bond obligations may be deducted in computing its outstanding bonded indebtedness.

7. That six so-called "serial notes" for approximately $50,000 each, payable in order from the first to the seventh year after their respective dates, which the town proposed to issue to meet the expense of a new high school, were municipal "bonds" as distinguished from mere temporary evidences of debt designed to liquidate current obligations in anticipation of the collection of taxes.

Argued January 18th—decided May 4th, 1928.

ACTION for a declaratory judgment determining the limits of bonded indebtedness permissible to the plaintiff and defendant, brought to the Superior Court in Fairfield County and reserved by that court (*John Richards Booth, J.*), upon an agreed statement of facts, for the advice of this court.

J. *Walter Madigan,* for the plaintiff.

*Thomas J. Ryle,* for the defendant.

HINMAN, J.   The determinative facts upon which the questions submitted arise are as follows: The town of Stamford and the city of Stamford are municipal corporations. The city of Stamford is located within the town, but the territorial limits of the town and the city are not coterminous, the area of the city being approximately twenty-four per cent of the area of the town, and the population of the city about eighty per cent of the combined population of the town and city. The town and the city are separate and independent political entities, and as such have separate and distinct forms of government, offices and officials, the town being vested with the powers, duties and func-

tions of constructing, equipping and maintaining the schools, charities and bridges in the town, both inside and outside the city limits, in addition to its general functions of government outside the city limits, and the city being vested with the powers, duties and functions of constructing, equipping and maintaining the highways, sewers, drains, police and fire departments, sanitation and health functions of government within the city limits.

The grand list of the town as of October 1st, 1926 (exclusive of tax exempt property) was $106,047,624. The total taxable property or grand list of the city (exclusive of tax exempt property) was $86,704,168. Tax exempt property located within the town, not including real estate owned by the United States and the State of Connecticut, was of the value of $8,991,820, and such tax exempt property to the amount of $8,497,488, was located within the city.

The town of Stamford has issued bonds in the amount of $3,608,000, of which bonds approximately eighty per cent pertain to its exercise of its functions of government exclusively within the confines of the city. The city has issued bonds in the amount of $1,999,000, representing about 2.305 per centum of the grand list of the city, excluding the amount of tax exempt property located therein.

Sinking funds of the town, set aside for the redemption of outstanding bond obligations, amount to $309,954.56, and sinking funds of the city, set aside for the redemption of bond obligations of the city, amount to $329,381.60.

The town, by vote, has duly authorized the issue of "serial notes" to the amount of $345,000, such notes to be of approximately $50,000 each, as the circumstances may require, each of which shall bear a rate of interest not to exceed five per cent per annum, and shall be

Stamford *v.* Stamford.

severally payable one, two, three, four, five, six and seven years after their respective date or dates.

The town is now engaged in the construction of a high school and it is necessary to issue the serial notes described above in order to finance and pay for such construction, and in addition thereto, it will be necessary for the town to issue bonds for an additional sum of at least $250,000 for the purpose of finishing the construction and equipping of the high school and grading. The city desires to immediately prosecute certain public improvements and to properly finance such improvements it is necessary to issue bonds.

The questions upon which advice is desired are, briefly stated, as follows:

1. Is the city of Stamford a town or consolidated town and city, or a political or territorial division thereof within the meaning of Chapter 162 of the Public Acts of 1925?

2. May the town of Stamford, by virtue of Chapter 162 of the Public Acts of 1925, issue bonds to the extent of five per centum of the grand list of the town, including tax exempt property located therein, and (3) may the city of Stamford, by virtue of §271 of its charter, issue bonds to the extent of three and one half per centum of the total taxable property or grand list of the city, or (4) are the town and city limited, in the issuance of bonds, to five per centum of the aggregate grand lists of the town and city?

5. If the town may and does issue bonds to the extent of five per centum of its grand list, to what limit may the city issue bonds?

6. If the city is limited in bonded indebtedness to three and one half per centum of its total taxable property or grand list, may it add thereto tax exempt property for the purpose of determining its limit of bonded indebtedness?

7. Does §271 of the charter of the city constitute a "Special Act" within the meaning of Chapter 162 of the Public Acts of 1925?

8-9. May sinking funds of the town and city, respectively, reserved for payment of outstanding bond obligations, be used as a credit and deduction in computing its outstanding bonded indebtedness?

10. Will the "serial notes" contemplated by the town constitute, when issued, an indebtedness through the issuance of bonds within the meaning of Chapter 162 of the Public Acts of 1925?

The provisions of Chapter 162 of the Public Acts of 1925, which are important to the present inquiry are as follows: "No town or consolidated town and city, either by itself or by any political or territorial division or divisions thereof, shall incur any indebtedness through the issuance of bonds which shall cause the aggregate net indebtedness of such town or city to exceed five per centum of its grand list, unless otherwise provided by Special Act. For the purposes of this act the grand list of every town or city shall be construed to include, in addition to the taxable real estate and tangible personal property, the fair market value of the tax exempt real estate therein, except such tax exempt real estate as may be owned by the United States, the State of Connecticut or the county in which such town is situated. . . . In computing the net indebtedness subject to the limit prescribed by this act, bonds issued for the supply of water, gas or electricity or for the construction of subways or underground conduits for cables, wires or pipes, shall not be included."

The first question is whether, in the situation as to territorial limits, governmental characteristics, and other relevant circumstances, the town of Stamford and the city of Stamford together constitute a "consolidated town and city," or the city "a political or ter-

ritorial division" of the town of Stamford, in the sense
in which those designations are employed in this Act.
In a general sense, to consolidate means to unite into
one mass or body; to combine. Webster's Interna-
tional Dictionary. It signifies something more than to
rearrange or redivide. *Fairview* v. *Durland,* 45 Iowa,
53, 56. As applied to business corporations a consoli-
dation takes place when two or more companies are
extinguished and a new one is created, taking over the
holdings of those companies passing out of existence.
The effect is to work a dissolution of the companies
consolidating and to create a new corporation out of
the old ones. 1 Words & Phrases (2d Series) 908, and
cases cited. It contemplates the creation of a new cor-
porate body which displaces and destroys an indivi-
dual existence of its predecessors. *Buford* v. *Keokuk
Northern Line Packet Co.,* 3 Mo. App. 159, 171; 12
Corpus Juris, 530. Likewise, where existing municipal
corporations are consolidated, almost invariably a new
corporation is created and takes the place of the old
and the latter cease to exist and can no longer exercise
any corporate powers unless their existence is expressly
continued for some specific purpose. *True* v. *Davis,*
133 Ill. 522, 22 N.E. 410, 6 L.R.A. 266; *Adams* v. *Min-
neapolis,* 20 Minn. 484; *Smith* v. *Saginaw,* 81 Mich.
123, 45 N.W. 964; *Warren* v. *Mayor of Charlestown,* 68
Mass. 84; *Stone* v. *Charlestown,* 114 Mass. 214; *Little
Rock* v. *North Little Rock,* 72 Ark. 195, 79 S.W. 785;
28 Cyc. 217.

The natural meaning and inherent force of the term
"consolidated town and city" as employed in this and
other statutes indicate that it comprehends only those
instances, of which this State affords several, in which
the original town organization and government and
that of a city territorially coterminous with or con-
tained within it, have been combined by charter in

and superseded by a single municipal government exercising the administrative and other powers and assuming the duties formerly vested in and imposed upon both. *e. g.*, Bridgeport, 10 Special Laws, 854; Hartford, 12 Special Laws, 624; New Haven, 12 Special Laws, 589, 1108. Here, however, we have two separate political entities, each possessing individual, although somewhat interrelated attributes, and lacking the primary and distinctive characteristics of consolidation, unification into one municipal corporation succeeding to all the functions of both. "The town . . . and the city, . . . within the territorial limits of the town, are each municipalities, independent of each other, and each performing different functions, discharging different duties, and exercising different powers, by virtue of charter provisions or general laws, and not interdependent except in some matters expressly provided for by statute." *Russell* v. *Middletown City School District*, 101 Conn. 249, 263, 125 Atl. 641. The city comprises part of the same area, territorially, and part of the same population as the town, but, acting officially, they serve different aims and objects. The city of Stamford is not, of itself, a town, neither is it a consolidated town and city. It is, at least territorially, a division of the town. *Russell* v. *Middletown City School District*, supra, p. 263.

The answers to the succeeding questions depend largely upon the construction of and effect to be given to Chapter 162 of the Public Acts of 1925, hereinbefore quoted, and the effect thereon, if any, of a provision of the charter of the plaintiff city. In 1915 a Public Act (Chap. 318) was passed providing that "no municipality or subdivision thereof shall incur any indebtedness, through the issue of bonds, in excess of five per centum of its grand list unless otherwise provided by special act." This was re-enacted, verbatim,

as §441 of the Revision of General Statutes, 1918.  In 1919, Chapter 108, 1921, Chapter 132, and 1923, Chapter 111, there were added various provisions as to property to be included in the grand list for the purpose of the statute, and permitting the exclusion, in computing net bonded indebtedness, of bonds issued for the supply of water, gas or electricity, but the general provision above quoted remained the same up to and including the Act of 1923.

In 1924 this statute, for the first time, was interpreted by this court in *Russell* v. *Middletown City School District, supra.*  The facts in that case essentially resemble the situation here presented.  The defendant school district was created by Special Act in 1889; the city of Middletown was incorporated many years before; the territorial limits of these corporations are the same, but are not coterminous with those of the town of Middletown, which embraces a larger area.  It was contended by the plaintiff that, in determining whether a bond issue proposed by the district was within the limitation imposed by the statute, such limit should be held to be based upon the aggregate indebtedness of the town, the city, and the school district, as compared with the aggregate of their respective grand lists.  This court applied to our statutory debt limitation the prevailing rule in the interpretation of similar limitations by constitution, that "where two or more corporations or political bodies are wholly or partly coincident in territory, they are nevertheless regarded as separate bodies for the purposes of . . . [the] limitation, unless the contrary is expressed." 5 McQuillin on Municipal Corporations, §2214.  It was held, as we have quoted at an earlier stage of this opinion, that the town, the city, and the school district were independent, and (p. 264) that "the provision relating to the debt limit applies to each of the three

municipalities within the limits . . . of the town of Middletown in such a way that no one of them is in any way affected by conditions existing in the others as to the amount of their grand lists and municipal bonds, and that the defendant district may issue bonds up to five per centum of its individual grand list."

In 1915 the General Assembly adopted a revision of the charter of the city of Stamford in which (§270) authority was given to issue bonds as therein specified and regulated, but it was further provided, in §271, that "the total amount of bonds hereby authorized shall be so limited that the total amount of city bonds of all kinds, at any time outstanding and unpaid, shall not be in excess of three and one half per centum of the total taxable property or grand list of said city." 17 Special Laws, pp. 597, 598.

Under the statute as it was until 1925, and as construed in *Russell* v. *Middletown City School District,* and this charter provision, it is clear that, upon the facts in the present case, the town of Stamford could issue bonds up to five per centum of its grand list, and the city could issue up to a like percentage of its own grand list but for the special limitation to three and one half per centum contained in its own charter. However, at the session of the General Assembly next following the decision in the *Middletown* case, §441 of the General Statutes was again amended by Chapter 162 of the Public Acts of 1925 and this time with respect to the general provision, until then unchanged, which was specially involved and construed in that case. We must, therefore, examine the extent and effect of the alteration worked by that amendment.

A statute is to be so construed as to carry out the intent of the legislature, this to be ascertained from the Act itself, if the language is plain, otherwise by considering it in the light of all its provisions, the ob-

ject sought to be accomplished, pre-existing legislation upon the same subject, and other relevant circumstances. *Hazzard* v. *Gallucci,* 89 Conn. 196, 198, 93 Atl. 230. If this intent is plainly indicated and definitely ascertained, the letter of the statute may not prevail against it. *Brown's Appeal,* 72 Conn. 148, 150, 44 Atl. 22. When a statute is amended and re-enacted in amended form, the presumption is that this was done in the light of the judicial construction that the prior enactment had received by the court of last resort of the State. *Hoxie* v. *New York, N. H. & H. R. Co.,* 82 Conn. 354, 73 Atl. 754; *Bruce* v. *Sierra,* 175 Ala. 517, 57 So. 709; Anno. Cas. 1914D, 125; 25 R.C.L. p. 1076. When changes have been introduced by amendment it is not to be assumed that they are without design. 2 Lewis' Sutherland on Statutory Construction (2d Ed.) §§401, 403.

Analysis of the amendments of 1925 indicates that they were made with the intent and purpose of changing the effect of the statute as interpreted in the *Middletown* case, so as to render its meaning and effect in substantial accord with the contention of the plaintiff in that case which was, in substance, the same as that of the present defendant town. The first change was the substitution for the words "no municipality or subdivision thereof" used in the prior Acts, the words "no town or consolidated town and city, either by itself or by any political or territorial division or divisions thereof." This alteration bears an obvious and significant relation to the claim made in the *Middletown* case that the municipal unit in Connecticut is the town and that the words "no municipality or subdivision thereof" should be construed as if the statute read "no town or subdivision thereof." The court held, however (p. 263), that this was not an admissible construction, because the town, the city, and the school

district were each independent municipalities, although the city and the district were, territorially, "subdivisions of the town." Clearly, we think, the intent and accomplishment of this change were to establish the town or consolidated town and city as the primary unit for the purposes of the statute, and to constitute any city, school district, or other similar division or subdivision, political or territorial, existing within the town, a subsidiary and included element in ascertaining the debt limit set by the statute, instead of according to each an independent right and basis of computation.

Again, the prior statute limited the indebtedness of a "municipality or subdivision thereof," through the issue of bonds. The limitation in the 1925 Act is of "the aggregate net indebtedness of such town or city." There is an unmistakable echo in the language of this amendment to the claim made in the *Middletown* case that the debt limit "should be held to be based upon the aggregate indebtedness" of the town, city, and district "as compared with the aggregate of their respective grand lists."

There is no inherent unwisdom in a constitutional provision or statute which thus limits the aggregate indebtedness of different political divisions or municipal corporations covering or extending over the same territory or portions thereof, each possessing power to contract debts and to levy taxes for their several purposes upon the same property and which are payable by the same persons. Framers of constitutions and legislators may well exercise great care to prevent reckless, extravagant or unduly burdensome cumulative incurrence of large and protracted debts by governmental agencies so situated. *Todd* v. *Laurens,* 48 S.C. 395, 26 S.E. 682. The obvious advantages of a reasonable and prudent restriction of their aggregate under-

takings may well be regarded as outweighing any incidental hampering of the activities of any one of them. Moreover, when, as in this State, the limitation is by statute, the way is open for relief by Special Act in any individual case in which exceptional circumstances may justify a relaxation of the general rules, and this avenue of adjustment is expressly indicated by our statute.

We are convinced that the intent of the 1925 amendment was to make the basis of limitation the aggregate bonded indebtedness, compared with the aggregate grand lists, of the town and all cities and school or other taxing districts within its territorial limits, and that the language employed, while in some respects, especially concerning aggregation of grand lists, not as definite as could be desired, may legitimately be construed as effectuating that intention.

It is claimed in behalf of the city of Stamford, however, that even if this be the general rule established by the Act of 1925, the city is relieved from its operation by the provisions of §271 of its charter, above quoted, it being argued that thereby it is "otherwise provided by Special Act" that the limitation as applied to the city shall be three and one half per centum of the taxable property or grand list of the city, separately considered. As we have before indicated, up to 1925 there was no repugnancy between the general statute, as construed in *Russell* v. *Middletown City School District,* and this provision of the Stamford charter; the effect of the latter was merely to reduce, as to this city, the general limitation prescribed by the statute and which otherwise would have applied. The effect of the 1925 amendment, as we have construed it, was to promulgate a new and radically different rule, with which the charter provision is palpably inconsistent. We may not presume, without

any significant indication thereof, that the legislature intended to leave the definite general rule then adopted subject to the subversive effect of the special provisions of individual municipal charters and other then-existing Special Acts. So far, then, as this charter provision is incompatible with the present statute it must give way. *State v. Scheidler,* 91 Conn. 234, 239, 99 Atl. 492; *Connelly* v. *Bridgeport,* 104 Conn. 238, 253, 132 Atl. 690; *Hartford* v. *Hartford Theological Seminary,* 66 Conn. 475, 34 Atl. 483; 1 Lewis' Sutherland on Statutory Construction (2d Ed.), §§274, 276. Adequate reason for the retention of the provision for exception by Special Act is found in the consideration already suggested that conditions may develop in some towns so affecting the appropriateness of the general limitation as to warrant a special legislative modification of the prevailing rule.

Furthermore, the apparent purpose of the charter provision was to work, not a liberalization, but a contraction of the general rule, and it is still left operative except as it conflicts with the new general basis of limitation. Even if the aggregate indebtedness of the town and city be below the five per cent statutory limit, the city may not utilize such margin beyond its own charter limit as set by §271, and for the purposes of computation and ascertaining the bounds of such limitation the basis is that prescribed by the charter— "the total taxable property or grand list" of the city, not including the tax exempt real estate, not in such grand list, which is permitted to be included in making the aggregate computation under Chapter 162 of the Public Acts of 1925.

Sinking funds reserved and pledged by the town for the payment of its existing bond obligations may be deducted in computing its outstanding bonded indebtedness, for the purposes of this statute, and the

city may, in like manner, offset the amount of its sinking funds against the bonded indebtedness for which they are maintained. The authorities disclose practical unanimity to this effect. *Williamson* v. *Aldrich,* 21 S. D. 13, 108 Pac. 1063; *Levy* v. *McClellan,* 196 N. Y. 178, 89 N. E. 569; *Kelly* v. *Minneapolis,* 63 Minn. 125, 65 N. W. 115, 30 L. R. A. 281; *Rice* v. *Milwaukee,* 100 Wis. 516, 76 N. W. 341; *Eau Claire* v. *Eau Claire Water Co.,* 137 Wis. 517, 119 N. W. 555, 562; *Schuldice* v. *Pittsburgh,* 251 Pa. St. 28, 95 Atl. 938; *Kirk* v. *School District,* 108 Okl. 81, 234 Pac. 596; *Halpin* v. *Rochester Borough,* 281 Pa. St. 109, 126 Atl. 241; *Stone* v. *Chicago,* 207 Ill. 492, 69 N. E. 970; 1 Dillon on Municipal Corporations (5th Ed.) §206; 5 McQullin on Municipal Corporations, §2238.

The remaining inquiry is as to whether the "serial notes," authority for the issue of which to the amount of $245,000 has been voted by the town of Stamford, will constitute, when issued, an indebtedness of the town through the issue of bonds, within the purview of the statute. As appears by the statement of facts, these notes are to be of approximately $50,000 each and are required to be severally payable one, two, three, four, five, six and seven years after their respective date or dates, and the proceeds are to be devoted to the cost of erection of a new high school building. The question presented is whether such notes fall within or without the category of bonded indebtedness. Municipal bonds are evidences of indebtedness, issued by cities, towns, or other corporate public bodies, negotiable in form, payable at a designated future time, and intended for sale in the market with the object of raising money for municipal improvements the expense of which is beyond the immediate resources of reasonable taxation, and payment of which of necessity or logically should be distributed over a period of years.

They are thus, in nature and purpose, distinguishable from temporary evidences of debt, such as vouchers, certificates of indebtedness, orders or drafts drawn by one officer upon another, and similar devices for liquidating current obligations in anticipation of the collection of taxes. 2 Bouvier's Law Dictionary (3d Rev.) p. 2269; 19 R. C. L., "Municipal Corporations," §285; 3 Words & Phrases (2d Series) p. 471; 5 McQuillin on Municipal Corporations, §2262. While it is not difficult to conceive of evidences of debt so sharing characteristics of both these classes of obligations as to make their assignment to one or the other a matter of difficulty, the notes here in question partake so fully of the distinctive characteristics of bonded indebtedness that we regard them as clearly belonging to that class.

We therefore answer the several interrogatories as follows: (1.) The city of Stamford is not a town or consolidated town and city, but a territorial division of the town of Stamford. (2., 3., 4., 5.) The town and city, together, are limited in the issuance of bonds to five per centum of their aggregate grand lists. (6.) No; but it may for purposes of computation of the aggregate grand lists of the town and city, as above explained. (7.) Section 271 of the charter is a Special Act but does not exempt the city from the operation of Chapter 162 of the Public Acts of 1925. (8., 9.) Yes. (10.) Yes.

No costs in this court to be taxed in favor of either party.

In this opinion the other judges concurred.