No. 37,743

In the Matter of the Estates of Raymond C. Wright and Ida Lorane Wright, both deceased, W. C. WRIGHT, Administrator, *Appellant,* v. HERBERT L. PIZEL, and MARJORIE M. PIZEL, next of kin of Donald Lee Pizel, deceased, *Appellees.*

No. 37,744

In the Matter of the Estates of Raymond C. Wright and Ida Lorane Wright, both deceased, W. C. WRIGHT, Administrator, *Appellee* and *Cross-appellant,* v. RONALD LEE PIZEL, a minor, by HERBERT L. PIZEL and MARJORIE M. PIZEL, parents and next friends, *Appellants* and *Cross-appellees.*

(214 P. 2d 828)

Opinion filed January 28, 1950.

*E. S. Hampton,* of Salina, argued the cause, and *Max Jones,* of Goodland, and *B. I. Litowich, LaRue Royce, H. H. Dunham, Jr., John Q. Royce,* and *H. G. Engleman,* all of Salina, were with him on the briefs for the appellant in No. 37,743, and for the appellees in No. 37,744.

*A. W. Relihan,* of Smith Center, argued the cause, and *T. D. Relihan,* of Smith Center, was with him on the briefs for the appellees in No. 37,743, and for the appellant in No. 37,744.

The opinion of the court was delivered by

HARVEY, C. J.: These appeals grew out of the same general facts, which may be summarized as follows: About 10:00 o'clock a. m. on January 4, 1948, Raymond C. Wright, who was driving his own automobile and who had as passengers riding with him his wife, Ida Lorane Wright, and his two grandsons, Ronald Lee Pizel and Donald Lee Pizel, four-year-old twins, drove across the Rock Island railway tracks near Kanorado and his car was struck by a train, with the result that Raymond C. Wright, Ida Lorane Wright and Ronald Lee Pizel were fatally injured and Donald Lee Pizel was seriously, though not fatally, injured.

On January 27, 1948, W. A. Wright was duly appointed and qualified as administrator of the estate of Raymond C. Wright and Ida Lorane Wright. On June 24, 1948, Herbert L. Pizel and Marjorie Pizel, parents of Ronald Lee Pizel and Donald Lee Pizel, filed their petition in the probate court for damages for the wrongful death of Ronald Lee Pizel, in which, among other averments, were allegations tending to show that Raymond C. Wright was guilty of wanton conduct in driving upon the railroad tracks under the circumstances alleged. On the same day they filed a similar petition as next friends and on behalf of Donald Lee Pizel, seeking damages for his injuries. Upon a hearing in the probate court the claims were allowed in whole or in part and the administrator appealed to the district court.

In the district court the administrator filed a motion to disallow the respective claims upon the ground that G. S. 1935, 8-122b prohibits any recovery; that the petitions showed that the respective minors were guests of Raymond C. Wright and that he was not guilty of gross and wanton negligence. The claimants filed a reply to the motion in which they alleged that G. S. 1935, 8-122b is unconstitutional and void, being in violation of section 18 of the bill of rights of the state of Kansas, and denied that the minors were guests of Raymond C. Wright at the time of the tragedy. In passing upon that motion the court held the statute (G. S. 1935, 8-122b) is not unconstitutional, but further held that the petitions for the demands contained allegations tending to show wantonness of the driver of the car at the time of the tragedy, upon which question there should be a trial by jury.

From this ruling the administrator has appealed, and this is our case No. 37,743. In this court it is conceded that the petition filed in the probate court contains allegations tending to show wanton conduct of Raymond C. Wright at the time he drove over the railroad crossing. But it is pointed out that in the hearing before the probate court testimony was received which tended to counteract those allegations. Counsel for the administrator ask us to consider that evidence as in effect modifying the allegations of the petition to disallow the respective claims upon the hearing of their motions to dismiss the respective claims. We are not justified in doing that. Upon appeal from the probate court the matter is to be tried *de novo* in the district court. Whether the evidence introduced in probate court will be offered in district court is unknown, and if produced the effect upon the allegations of the petition is for the triers of fact in the district court.

The result is that the appeal in our No. 37,743 must be affirmed.

The administrator filed an answer to each petition in which he denied the facts alleged in the petitions tending to show wantonness and alleged that the minor children were guests of the driver, who was not guilty of gross and wanton negligence in the operation of the car, and that claimants had no cause of action by reason of the guest statute. The claimants demurred to the answers on the ground, among others:

"That G. S. 1935, 8-122b, as construed by the Supreme Court of the State of Kansas, is not a valid law but is unconstitutional and void for the reason it violates Section 18 of the Bill of Rights of the Constitution of the State of Kansas, in that it denies one suffering injuries to his person right of recovery by due course of law."

The demurrers were overruled and claimants have appealed from that ruling in the claim for injuries to Donald Lee Pizel. This constitutes the appeal in our case No. 37,744. The only question involved in the appeal is the constitutionality of G. S. 1935, 8-122b, as construed by this court in view of section 18 of the bill of rights of our constitution.

Section 18 of our bill of rights reads:

"All persons, for injuries suffered in person, reputation or property, shall have remedy by due course of law, and justice administered without delay."

In 1931 our legislature enacted what is commonly known as our guest statute (Chap. 81, Laws 1931), which was embodied in our General Statutes of 1935 as section 8-122b. It reads as follows:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

The statute first came before this court in the case of *Stout v. Gallemore,* 138 Kan. 385, 26 P. 2d 573, where the court held:

"The effect of our statute (R. S. 1931 Supp. 8-122b) is to relieve the operator of an automobile from liability to his guest resulting from negligence, as the term negligence is distinguished from wantonness."

Counsel for appellants here contend that in reaching this conclusion we rewrote the phrase "gross and wanton negligence" used in the statute so as to read "wanton conduct," and in doing so did not correctly interpret the statute. In the opinion we took note of the fact that the phrase "gross and wanton negligence" was not well selected; that in the earlier history of the state our statutes and decisions recognized three classes of negligence—slight, ordinary and gross; that this classification lacked a firm basis, for damages resulting to one injured by the negligence of another were not increased or diminished by the classification into degrees of negligence which caused the injury; that the classification caused much trouble to courts and litigants in attempting to apply the definitions of the different degrees of negligence to the facts of a particular case, and that in harmony with the sounder reasoning and with the leading authorities elsewhere the classification of negligence into degrees was taken out of the law of this state (*Railway Co. v. Walters,* 78 Kan. 39, 96 Pac. 346), and that due care became and is the sole test, and the lack of due care is negligence. We pointed

out also that wanton conduct differs from negligent conduct not in degree but in kind, and cited authorities, including our prior decisions, making that clear. Our purpose was to determine the meaning of the language used in the statute. The words "gross . . . negligence," standing alone, would mean one thing—lack of due care, inadvertence—while "wanton" conduct would mean something entirely different, an intentional act performed with knowledge that it would likely cause injury or damage to someone and with utter disregard of the consequences. If the legislature by the use of the words "gross negligence" meant lack of due care, the statute made no change in our law, for before its enactment the host was liable to the guest for injuries resulting from lack of due care. By the use of the word "wanton" in the phrase "gross and wanton negligence," the legislature intended to change the existing rule of liability of a host to his guest. Considering the statute as a whole, clearly that was the legislative purpose, and the effect to be given to the statute was only by interpreting it as we did.

We call particular attention to the Michigan guest statute (Chap. 19, Public Acts 1929), the pertinent portions of which read:

"That no person, transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought." (pp. 278, 279.)

In *Grabowski v. Seyler*, 261 Mich. 473, 246 N. W. 189, dealing with a case which arose under the statute, the court used this language:

"The term 'gross negligence' prescribes no standard of conduct. There are no degrees of negligence in this State. . . .

"In this jurisdiction there is no such thing as gross negligence in the sense of great or much negligence. (Citations.) The term 'gross negligence,' as employed in this statute, does not mean something of less degree than wilful and wanton misconduct."

Citing *Oxenger v. Ward*, 256 Mich. 499, 240 N. W. 55, where the court analyzed the meaning of the term "gross negligence," citing many earlier Michigan cases.

Under a similarly worded guest statute the supreme court of South Dakota, in *Melby v. Anderson*, 64 S. D. 249, 266 N. W. 135, 137, followed this interpretation under the guest statute of that state,

which was the same as that of Minnesota, and cited our case of *Stout v. Gallemore*, 138 Kan. 385, 26 P. 2d 573. A similar question arose in the case of *Silver v. Silver*, 108 Conn. 371, 143 A. 240, where the court was required to interpret the guest statute of that state, the first portion of which reads like ours, but the latter part reads as follows:

". . . unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others."

The court said:

"It is the contention of the plaintiff that the statute effects no change in the liability of the owner or operator to his guest, and that the former is still liable if the accident is caused by his 'heedlessness' which the plaintiff claims is the equivalent in meaning of carelessness or negligence. She further claims that, if the statute should be construed as exempting from liability for ordinary negligence, it would then be unconstitutional because it is an unjust discrimination between persons of the same class. The word 'heedlessness' signifies a failure to take heed and is a synonym of carelessness. Standing by itself it connotes a lack of care substantially identical with that indicated by the word negligence. The question for our consideration, however, is not the meaning of a single word in an abstract sense, but its meaning with due regard to its context and the meaning of the entire phrase or sentence in which it appears. We must assume that the Legislature was familiar with the decisions of this court permitting a recovery by a guest in an automobile for injuries resulting from the negligence of the owner or operator, and that when it undertook to legislate upon that subject it was with the purpose of making some change in the existing law. *Stamford v. Stamford*, 107 Conn. 596, 606, 141 A. 891, 895. Such purpose is pretty clearly indicated in the title of the Act and in the first clause of the first section which provides that no guest shall have a cause of action against the owner or operator of the car in case of accident. Then follows a statement of the exceptions to the general rule— . . .

"If the phrase 'or caused by his heedlessness' is to be taken as strictly disjunctive as by itself constituting an exception to the general rule of non-liability, and 'heedlessness' is held to be synonymous with 'negligence,' the entire statute is nugatory and effects no change whatever in the law as it existed before its enactment. We do not think that is a sensible construction of the statute. It would utterly fail to effectuate the obvious purpose of the legislature in some way to limit the liability of the owner or operator of a motor vehicle to one who was riding in it as his guest. The language of the statute indicates an intention to limit such liability to two classes of cases, first, when the accident was caused by intentional misconduct, and second, when it was caused by heedless or reckless disregard of the rights of others, meaning thereby something more than the mere failure to exercise the care of a reasonably prudent man which is the familiar definition of negligence."

Perhaps similar questions for interpretation of the wording of the guest statute arose in other states, but our time is not sufficient

to enable us to examine all of the cases to see if such a question was presented. We are satisfied with our interpretation of the statute upon this point in *Stout v. Gallemore,* supra.

This construction given to the statute has been followed and approved by our court in the following cases: *Sayre v. Malcom,* 139 Kan. 378, 379, 31 P. 2d 8; *Ewing v. Edwards,* 140 Kan. 325, 36 P. 2d 1021; *Aduddell v. Brighton,* 141 Kan. 617, 619, 42 P. 2d 555; *Anderson v. Anderson,* 142 Kan. 463, 465, 50 P. 2d 995; *Donelan v. Wright,* 148 Kan. 287, 290, 81 P. 2d 50; *Leabo v. Willett,* 162 Kan. 236, 238, 175 P. 2d 109; *Srajer v. Schwartzman,* 164 Kan. 241, 247, 188 P. 2d 971.

Our case has been cited and approved upon this point in *Perkins v. Roberts,* 272 Mich. 545, 262 N. W. 305; *Melby v. Anderson,* 64 S. D. 249, 266 N. W. 135, 137; *Gallegher v. Davis and Law,* 37 Del. 380 (7 Harr. 380), 183 A. 620, 622, and in *Stevers v. Walker,* 233 Mo. App. 636, 125 S. W. 2d 920, in a case involving our guest statute.

See, 60 C. J. S., title Motor Vehicles (p. 991), § 399 (3), where the various guest statutes, including our statute, are discussed. See, also, 38 Am. Jur., title Negligence, § 48, dealing with willful and wanton acts, and authorities there cited.

Counsel for appellant contend that our guest statute, previously set out herein, is unconstitutional in that it violates section 18 of our bill of rights, previously set out herein. The same question was raised in *Silver v. Silver,* 108 Conn. 371, 376, 143 A. 240, where in the opinion the court said:

"The plaintiff contends that the statute, if thus construed, denies to guest in motor vehicles the equal protection of the laws and therefore violates constitutional guaranties."

Section 12 of the declaration of rights of the Connecticut constitution reads:

"All courts shall be open, and every person, for an injury done him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

The court did not specifically mention this provision of the constitution, nor did it specifically mention the fourteenth amendment to the federal constitution, but there is no reason to say that both of them were not considered. The court went ahead to say:

"Legislation under the police power of the States is not confined to public health, safety or morality, but may extend to matters in the interest of the public welfare or convenience. (Citations.) . . . The legislative depart-

ment is the judge, within reasonable limits, to determine what public convenience and public welfare require, and the wisdom of its legislation is not the concern of the courts. It is our duty to sustain an Act unless its invalidity is in our judgment beyond a reasonable doubt. (Citations.) That the State may under the police power regulate travel upon the public highways cannot be doubted. (Citations.) This includes the power to regulate the use of motor vehicles. (Citations.) 'That the regulation of motor vehicles and motor vehicle traffic is a proper subject for legislative action under the police power is not questioned.' (Citations.) Ever since motor vehicles have come into general use they have been classified separately from horse-drawn vehicles and the power of the legislature to impose upon their owners and operators duties not placed upon others has been generally upheld. (Citations.) The plaintiff's contention is that the statute makes an unreasonable classification between the guest in an automobile and the guest in any other mode of conveyance or in any other place, thus depriving him of the equal protection of the law. Assuming, as we must, the power of the legislature to regulate the operation of motor vehicles, that includes the power to enact legislation affecting the reciprocal rights and duties of all who use them, owners, operators or occupants, when these rights and duties arise out of such operation. The duty which the owner or operator owes to his guest in the operation of the automobile being a legitimate subject-matter of legislation, the guest is not deprived of the equal protection of the law because that duty is made to vary from that owed to a house guest or a guest in some other mode of conveyance. The basis of the classification is the automobile, and the Act affects alike all those who may elect to be transported in it as guests of its owner or operator. This classification is within the wide range of discretion which the legislature has, since it has a fair and substantial relation to the object of the legislation, which is the control or regulation of automobile traffic upon our public highways. (Citations.) Primarily the question of classification is for the legislature and the courts will not interfere unless the classification is clearly unreasonable. . . .

"The statute imposes upon the owner or operator of a motor vehicle a different degree of care toward a guest than he is required at common law to exercise toward a passenger who pays for his transportation. Such a distinction between the duty imposed in the case of the gratuitous performance of services and the performance of them for hire is to be found running through many fields of the law. . . . In some jurisdictions it is held that the owner or operator of a motor vehicle is liable to a guest only in the case of gross negligence, in analogy to the rule prevailing in the case of a gratuitous bailment of goods. (Citations.) There is inherent justice in the requirement that one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay, and the reason for a distinction between the measure of liability in the case of a gratuitous bailment and gratuitous transportation is not obvious. It seems to us that the legislature was acting well within the limits of the police power in making a distinction between the degree of care to be exercised by the owner or operator of a motor vehicle toward a guest and that to be exercised toward one who pays for his transportation. . . ."

The court held the statute valid as containing no constitutional infirmities.

The case was appealed to the supreme court (280 U. S. 117, 50 S. Ct. 57, 74 L. ed. 221), where, in an opinion by Mr. Justice Stone, the judgment of the state court was affirmed. The pertinent head notes read:

"The Constitution does not forbid the abolition of old rights recognized by the common law, to attain a permissible legislative object.

"A state statute providing that no person carried gratuitously as a guest in an automobile may recover from the owner or operator for injuries caused by its negligent operation, is not in conflict with the equal protection clause of the Fourteenth Amendment because of the distinction it makes between passengers so carried in automobiles and those in other classes of vehicles.

"A statutory classification may not be declared forbidden as arbitrary unless grounds for the distinction are plainly absent.

"Conspicuous abuses, such as the multiplicity of suits growing out of the gratuitous carriage of passengers in automobiles, may be regulated by the legislature without regulating other like, but less conspicuous, examples."

In the opinion the court limited its review to the single question arising under the federal constitution and said:

"We need not, therefore, elaborate the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object."

In support of the statement the court cited four cases: *Pizitz Co. v. Yeldell*, 274 U. S. 112, 47 S. Ct. 509, 71 L. ed. 952, where the head note reads:

"A state law allowing punitive damages to be assessed in actions against employers for deaths caused by negligence of their employees—the object of the statute being to prevent negligent destruction of human life—does not violate the due process clause of the Fourteenth Amendment."

In *New York Central R. R. Co. v. White*, 243 U. S. 188, 37 S. Ct. 247, 61 L. ed. 667, sustaining the validity of the New York workmen's compensation law, where the pertinent head note reads:

"The common-law rules respecting the rights and liabilities of employer and employee in accident cases, viz., negligence, assumption of risk, contributory negligence, fellow-servant doctrine, as rules defining legal duty and guiding future conduct, may be altered by state legislation, and even set aside entirely —at least if some reasonably just substitute be provided.

"Since the matter of compensation for disability or death incurred in the course of hazardous employment is of direct interest to the public as a matter affecting the common welfare, the liberty of employer and employee to agree upon such compensation as part of the terms of employment is subject to be restricted by the state police power.

502

"The denial by a State of trial by jury is not inconsistent with due process of law, within the meaning of the Fourteenth Amendment."

On page 198 the court had occasion to say:

"No person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit." (Citing *Munn v. Illinois*, 94 U. S. 113, 24 L. ed. 77, and other cases.)

Also cited is *Mountain Timber Co v. Washington*, 243 U. S. 219, 37 S. Ct. 260, 61 L. ed. 685, sustaining upon similar grounds the workmen's compensation act of the state of Washington.

And, also, *Wilmington Mining Co. v. Fulton*, 205 U. S. 60, 27 S. Ct. 412, 51 L. ed. 708, sustaining a similar mining statute of 1899. The pertinent syllabus reads:

"It is within the power of the State to change or modify, in accord with its conceptions of public policy, the principles of the common law in regard to the relation of master and servant; and, in cases within the proper scope of the police power, to impose upon the master liability for the willful act of his employé."

In *Munn v. Illinois*, 94 U. S. 113, 24 L. ed. 77, sustaining a statute of the state of Illinois which fixed maximum charges for the storage of grain in public warehouses within the state, the head note here pertinent reads:

"Under the powers inherent in every sovereignty, a government may regulate the conduct of its citizens toward each other, and, when necessary for the public good, the manner in which each shall use his own property."

In the opinion (p. 134) the court used the following language:

"But a mere common-law regulation of trade or business may be changed by statute. A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances. . . ."

Prompted by the last quoted sentence we take note of the fact that in our session laws enacted at any session of our legislature, aside from appropriation measures, the "new" statutes are nothing more than a modification of previously existing rules of law. The instances are rare when this is not true. In fact, any statute, and most other rules of law, have the effect of drawing a line through some human rights or activities, and to say that the law applies on

one side and not on the other. The design of each of them is to be of some benefit to the people. Sometimes a line so drawn so nearly fits the rights or needs of the people that it will be unchanged for many years. At other times, almost as soon as it is attempted to be applied, modifications of it in the public interest will suggest themselves, with the result that "new" statutes will be enacted by the legislature. These changes in our laws record the thought of the lawmakers as to the wants and needs of the people at the time of their enactment. This is true whether they apply to statutes previously enacted in the state or whether they apply to rules of common law. Indeed, our statute pertaining to the applicability of the common law in this state (G. S. 1935, 77-109) reads:

"The common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the General Statutes of this state"; and the statutes shall be liberally construed to promote their object.

So it cannot be said that the common law cannot be modified by statute when the law-making body deems such a modification to be necessary or proper. Indeed, we are accustomed to speak of such changes as a matter of course. While many examples of that could be given we mention only a late one. (See *State Highway Comm. v. Stadler*, 158 Kan. 289, 292, 148 P. 2d 296.)

Guest statutes similar to our own have been enacted in many states. Cases construing many of them are collected and commented upon in 111 A. L. R. 1011. We shall not attempt to comment on these numerous cases. A relatively late one, sustaining the guest statute of Illinois, is *Clarke v. Storchak*, 384 Ill. 564, 52 N. E. 2d 229; appeal dismissed 322 U. S. 713, 64 S. Ct. 1270, 88 L. ed. 1555. It discusses and answers all the questions raised by counsel for appellant here, and others. Counsel for appellant cite *Stewart v. Houk et al.*, 127 Or. 589, 271 Pac. 998, where the court held void the first guest statute of Oregon (Chap. 342, Laws 1927), which denied the right of a guest to any relief without regard to the cause. But in 1929 the legislature of Oregon passed a new guest law which provided that the guest should not have a cause of action against the owner or operator for injury, death or loss in case of accident, "unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others." This statute was held constitutional by the supreme court of Oregon in the case of

*Perozzi v. Ganiere,* 149 Or. 330, 40 P. 2d 1009, which reviewed and followed many of the other cases.

Counsel for appellant also cite *Ludwig v. Johnson,* 243 Ky. 533, 49 S. W. 2d 347, holding invalid the guest statute of that state, and allowed no cause of action against the owner or operator for any injuries received, death or loss sustained in case of accident, "unless such accident shall have resulted from an intentional act on the part of said owner or operator." The constitution of Kentucky contains a section substantially the same as section 18 of our Bill of Rights, and another section which reads:

"The general assembly shall have no power to limit the amount recovered for injuries resulting in death, or for injuries to person or property."

And also a section which reads:

"Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same."

The court (two justices dissenting) held the statute to be in violation of the constitution of Kentucky. The decision may be justified for the reasons stated, but although it is referred to in a number of other cases it has not been held controlling in any of them because their constitutions did not specifically prohibit the legislature from passing acts relieving one from liability for negligence. Our constitution contains no provision so limiting our legislature.

Counsel for appellant cite and rely heavily upon *Hanson v. Krehbiel,* 68 Kan. 670, 75 Pac. 1041. In that case the court held invalid Chap. 249, Laws 1901, which, under the circumstances stated, permitted recovery in an action against any publication for libel to what plaintiff might show he has suffered in respect to his property, business, trade, profession or occupation, and no other damages whatsoever. The effect of the statute was construed to be that in a publication of matter which is libelous *per se,* which subjected one to disgrace, ridicule or contempt, there could be no recovery. The court held the statute in violation of section 18 of our Bill of Rights. We first note there is no suggestion in that case that the statute might be sustained under the police power of the state, nor were any facts stated justifying such a holding. The case has never been cited by this court upon that point.

In *Coleman v. MacLennan,* 78 Kan. 711, at page 722, 98 Pac. 281, after quoting section 18 of our bill of rights, this language was used:

"It is very clear that these words cannot, however, be given unlimited significations and force in all cases. Where the public welfare is concerned the individual must frequently endure injury to his reputation without remedy. In some states an overmastering duty obliges a person to speak, although his words bring another into disrepute. Such is the case of a witness testifying to relevant facts in court. . . ."

In *Cooper v. Seaverns*, 81 Kan. 267, 105 Pac. 509, the rule of the common law, that spoken words imputing unchastity to a female are not actionable without allegation and proof of special damages, is not in harmony with the law of this state and will not be followed.

And G. S. 1935, 21-2406, reads:

"In all indictments or prosecutions for libel, the jury, after having received the direction of the court, shall have the right to determine, at their discretion, the law and the fact."

We are of the opinion that the slander and libel cases are not in point.

Counsel for appellant cite *Jones v. Railway Co.*, 98 Kan. 133, 157 Pac. 399, which had to do with our statute (now G. S. 1935, 66-275), requiring railroads to carry passengers above the age of fifteen years upon all freight trains to which a caboose is attached, with the provision that on such trains the railroad companies shall only be liable for their gross negligence, which opinion was handed down in 1916, by showing this court recognized "gross negligence" after degrees of negligence had been abolished by judicial decree in the case of *Railway Co. v. Walters*, 78 Kan. 39, 96 Pac. 346, which was decided in 1908. We do not regard this as being of importance. The Jones case is really an authority to sustain the power of the legislature to limit the liability of a railroad company toward its passengers, which would exist without such a statute (see cases cited, p. 135, and G. S. 1935, 66-234), because of the particular mode of travel.

We need not write extensively upon the police power of the state. A good treatise upon that subject is found in 16 C. J. S. 537 to 578, also in 11 Am. Jur. 966 to 1092.

If, under the common law, plaintiff, a child four years of age in January, 1948, would have had any cause of action against his grandparents, in whose custody he had been placed by his parents, for damages resulting from their negligence—a fact which we do not determine since it was not presented to and ruled upon by the trial court nor argued here—the above authorities show he had no vested right in such cause of action as would prevent the legislature,

acting under the police power of the state, from removing it, in 1931, by G. S. 1935, 8-122b.

We find no error in the ruling of the trial court from which the appeal was taken in our No. 37,744 and its judgment, therefore, is affirmed.

SMITH, J., dissenting from syllabus 3.